JAMES H. WEAR *vs.* TRUMAN SKINNER.

*Construction of the Act of 1868, ch. 359, relating to the Statute of Limitations.*

The Act of 1868, ch. 357, provides, that "In actions hereafter brought where a party has a cause of action, of which he has been kept in ignorance by the fraud of the adverse party, the right to bring the suit shall be deemed to have first accrued at the time at which such fraud shall, or with usual and ordinary diligence might have been known or discovered." HELD:

1st. That it was not thereby meant that in all cases a party must commit a fraud *distinct* from, and *independent* of the original fraud, for the purpose of

keeping the injured party in ignorance of his cause of action, nor that the mere concealment of the fraud is insufficient.

2nd. That where one practices fraud to the injury of another, the *subsequent concealment* of it from the injured party is *in itself a fraud*, and if he is thereby kept in ignorance of his cause of action, he is kept in ignorance by "the fraud of the adverse party."

In an action of deceit brought to recover damages for an alleged fraud, by which the plaintiff was induced to assign to the defendant his interest in a firm of which the two had been members; upon a plea of the Statute of Limitations and replication thereto, it was HELD:

That if the plaintiff was induced to assign to the defendant his interest in said firm by fraud practiced on him by the defendant, and such fraud was concealed from him by the defendant, whereby he was kept in ignorance of his cause of action, then his right to bring the suit must be deemed to have first accrued when such fraud was, or with usual and ordinary diligence might have been discovered.

APPEAL from the Superior Court of Baltimore City.

The case is sufficiently stated in the opinion of the Court.

*Exception.*—At the trial the plaintiff offered the three following prayers:

1. The plaintiff prays the Court to instruct the jury, that if they find from the evidence, that the plaintiff, Wear, and the defendant, Skinner, were members of the firm of Skinner, Neale & Co., and that the said Wear was not an active member of said firm, but that its business was conducted by said Skinner and Irvin Neale; and if they shall further find, that while said firm was so conducting its business, the defendant, Skinner, induced the said Wear to consent that the said firm of Skinner, Neale & Co., should become bound in any way for the accommodation of said Skinner, upon a note or notes made by said Skinner, for money alleged by said Skinner, to be due from him to other persons as mentioned in evidence; and if they shall further find, that said Skinner, in order to procure said endorsement of, or other use of the name

of Skinner, Neale & Co. on said note or notes, repre-
sented that the persons to whom said money was alleged to
be due, had demanded that he, the said Skinner, should
secure the payment of the same, by giving his note or
notes therefor, with an endorser or surety on said note or
notes ; and if they shall further find, that the representa-
tions by which said Skinner procured such endorsement,
or other use of the name of Skinner, Neale & Co. on
such note or notes were untrue, then the procurement by
said Skinner, of such use of the name of Skinner, Neale
& Co. on said note or notes, was a fraud upon said Wear.

2. If the jury shall find the facts stated in the plaintiff's
first prayer, and shall further find that said Skinner,
(after so procuring the consent of said Wear to the use
of the name of Skinner, Neale & Co., on the note or
notes of said Skinner, as mentioned in said first prayer,
for the accommodation of said Skinner,) made use of the
obligation which said Wear had contracted, by such use of
the name of Skinner, Neale & Company on said note or
notes, for the purpose of compelling said Wear to assign
to him, the said Skinner, the interest of said Wear in the
firm of Skinner, Neale & Co., by threatening said Wear,
that unless he, the said Wear, would make such assign-
ment, and accept in payment therefor, the note of Wm.
G. Wear, offered in evidence, he, the said Skinner, would
suffer his note or notes, on which the name of Skinner,
Neale & Co. had so been procured to be used, to be
protested for non-payment, so as to make said Wear
liable as a member of Skinner, Neale & Co., for the
payment of said note or notes.   And if they shall further
find that said Wear was induced to make the assign-
ment to said Skinner, of his, the said Wear's interest in
Skinner, Neale & Co., by such threat of said Skinner,
and that said Wear but for such threat, and but for the
fear on his part, caused by the acts and declarations
of said Skinner, would not have assigned his interest in

said firm of Skinner, Neale & Co. to said Skinner, and would not have accepted the note of W. G. Wear in payment for said interest, then the assignment of the interest of said Wear, in said firm of Skinner, Neale & Co., was fraudulently procured by said Skinner, and the plaintiff is entitled to recover such loss as the jury may find that he has sustained, by reason of said assignment of his said interest in the firm of Skinner, Neale & Co., provided the jury shall find the facts stated in the plaintiff's third prayer.

3. If the jury shall find the facts stated in the two preceding prayers of the plaintiff, being his first and second prayers, and shall further find that the use of the name of Skinner, Neale & Co. on the note or notes of the said Skinner, was procured by the said Skinner, in the manner set forth in the first prayer, and that the said Skinner made use of the obligation incurred by said Wear, by such use of the name of Skinner, Neale & Co. on said note or notes, in the manner set forth in the plaintiff's second prayer; and if the jury shall further find that the plaintiff, at the time he consented to allow the name of Skinner, Neale & Co., to be used in any manner as security for the payment of the note or notes of said Skinner, as set forth in the plaintiff's first prayer, believed and acted upon the representations of said Skinner, by which said Skinner procured the use of the name of Skinner, Neale & Co. on said notes, as mentioned in the plaintiff's first prayer; and if the jury shall further find, that the plaintiff was prevented by the acts of said Skinner, done for the purpose, from discovering that the said use of the name of Skinner, Neale & Co. on said note or notes of said Skinner, had been procured by said Skinner in the manner set forth in the plaintiff's first prayer, until within three years before the institution of this suit, and until within three years from the time, when the plaintiff by usual and ordinary diligence under the circumstances of the case,

might have ascertained said fraud, then the Statute of Limitations is no bar to the plaintiff's recovery.

And the defendant offered the following prayer.

1. The defendant by his counsel, prays the Court to instruct the jury, that the plaintiff has offered no evidence legally sufficient to maintain his replication to the defendant's second plea, and their verdict must therefore be for the defendant.

And the defendant offered four other prayers which were afterwards withdrawn, and are consequently omitted, and also offered the following exception to the plaintiff's prayers.

The defendant excepts to all of the prayers of the plaintiff, because among other reasons, there is no evidence in the cause to sustain the same or any of them.

The Court, (DOBBIN, J.,) granted the defendant's first prayer, and refused all the prayers of the plaintiff, assigning as the reason for such refusal the granting of the defendant's first prayer, and the withdrawal of the cause from the jury by the granting of said prayer. The plaintiff excepted.

The jury rendered a verdict for the defendent, and judgment was entered accordingly. The plaintiff appealed.

The cause was argued before BARTOL, C. J., STEWART, BOWIE, GRASON, MILLER, ALVEY and ROBINSON, J.

*Charles Marshall*, for the appellant.

The Court below decided that although the cause of action itself arise from fraud practiced by the defendant upon the plaintiff, and that fraud be not found out by the plaintiff until within three years before the institution of the suit, yet, unless there be evidence of *some other distinct fraud* whereby knowledge of the *right of action for fraud* was concealed from the plaintiff, the replication is not supported.

It is respectfully submitted that this is not the correct rule, and that if, as in this case, the right of action arises from the fraud of the defendant, such fraud may at one and the same time, give a right to sue, *and conceal that right from the party entitled to it*, so as to support the replication, without any other or different act of fraudulent concealment by the defendant.

This would seem to be right if we regard the reason of the common law rule in those Courts that permitted such a replication at law, as well as the reason of our Statute.

A right of action for fraud, pre-supposes a successful fraud, and a successful fraud assumes that it is *concealed* from the victim of it, not merely *unknown* to him.

A man cannot defraud another without concealment or deception of some kind. It may be said of fraud as of art; "*fraus est et celare fraudem.*"

The reason of the rule of law and of the Statute is, that it would be most unjust and subversive of good morals, to permit a man to defend himself on the ground that he had not been sued in time, when he had, by his own fraud, prevented his victim from knowing that he was liable to be sued.

If then the cause of action itself be for fraud, and no such cause of action could arise except by the success of the defendant in deceiving the plaintiff, and there can be no successful deception without concealment, it is difficult to see why a new and additional act of fraud to continue the concealment should be required to sustain the replication. *Bailey vs. Glover*, 21 *Wallace*, 342 ; *Massachusetts Turnpike Co. vs. Field*, 3 *Mass.*, 201 ; *Homer vs. Fish*, 1 *Pickering*, 435 ; *Welles vs. Fish*, 3 *Pick.*, 74 ; *Sherwood vs. Sutton*, 5 *Mason*, 143 ; *Booth vs. Lord Warrington*, 4 *Brown's Parliamentary Cases*, 163 ; *South Sea Company vs. Wymondsell*, 3 *Peere Williams*, 143 ; *Hovenden vs. Lord Annesley*, 2 *Sch. & Lef.*, 634 ; *Stearns vs. Page*, 7 *Howard*, 819 ; *Moore vs. Greene*, 19 *Howard*, 69 ; *Snod-*

*grass vs. Bank, &c.*, 25 *Ala.*, 161; *Gregg vs. Sayre's Lessee*, 11 *Curtis*, 82; *Moss vs. Riddle & Co.*, 2 *Curtis*, 290.

*S. T. Wallis*, for the appellee.

The fraud allowed by the Act of 1868, to be set up in bar of limitations must be a specific, substantive fraud, apart from, and superadded to, the fraud which is the cause of action. It must be a fraud practiced after the cause of action has arisen, and for the purpose of keeping the injured party from finding out that he has such cause of action.

This is the language of the Act properly construed, and the opposite construction would be equivalent to ruling, that the Statute of Limitations does not apply to cases of fraud. *Rice vs. Burt*, 4 *Cushing*, 208; *Smith vs. Bishop*, 9 *Vermont*, 110–115; *Clark vs. Hougham*, 2 *Barn. & Creswell*, 149, (9 *E. C. L.*, 48;) *Granger vs. George*, 5 *Barn. & Cres.*, 149–152, (11 *E. C. L.*, 185;) *Stanley vs. Stanton*, 36 *Indiana*, 449; and see *Clarke's Adm'r vs. Marriott's Adm'r*, 9 *Gill*, 338, adopting 2 *Greenleaf's Evidence*, 448.

Upon any construction of the Act of 1868, the *onus* is on appellant to prove the fraud averred in the replication, and that he used usual and ordinary diligence to find it out. This *onus* is strictly enforced and required. *Stearne vs. Page*, 7 *Howard*, 819–829; 2 *Greenleaf's Evidence, sec.* 488.

ROBINSON, J., delivered the opinion of the Court.

This is an action for *deceit* brought by the appellant against the appellee, to recover damages for an alleged fraud, by which the former was induced to assign to the latter, his interest in the firm of Skinner, Neale & Co., of which they had both been members

The defendant pleaded *non cul*, and the Statute of Limitations.. Issue was joined on the plea of not guilty, and to the plea of the Statute, the plaintiff replied:

"That he was kept in ignorance by the fraud of the defendant for a long time of the cause of action, which he had against the defendant, and that he brought his action within three years from the time at which he could, with usual and ordinary diligence, have discovered the fraud."

Issue was joined on the replication, and the Court below rejected the several prayers offered by the plaintiff, and instructed the jury that he had offered no evidence *legally sufficient* to maintain the replication, and their verdict must be for the defendant.

We understood the appellee to contend, that although the plaintiff was injured by fraud practiced on the part of the defendant, and such fraud was not discovered by him within three years before the institution of this suit, yet in order to support the replication, it was necessary to prove *some other distinct fraud* on the part of the defendant, whereby the plaintiff was kept in ignorance of his cause of action ; and that the *mere concealment of the original fraud from the Plaintiff will not be sufficient.*

The replication was filed under the Act of 1868, ch. 357, which provides that—

"In all actions to be hereafter brought where a party has a cause of action, of which he has been kept in ignorance by the fraud of the adverse party, the right to bring the suit shall be deemed to have first accrued, at the time at which such fraud shall or with usual and ordinary diligence might have been known or discovered." Here then is a remedial Act, passed for the purpose of enabling parties in *actions at law*, to set up the fraud of the defendant, in order to avoid a plea of limitations, and if there be any difficulty in its construction, an examination of the law on the subject, as recognized by Courts of equity and Courts of law at the time the Act was passed, may aid us in determining what the Legislature meant.

And to this end, we deem it unnecessary to review the many cases in which the subject has been considered by

Courts of equity, for we think one may safely say, it is well settled by such Courts, that where a party has been injured by the fraud of another, and *such fraud is concealed*, or is *of such character as to conceal itself*, whereby the injured party remains in ignorance of it without any fault or want of diligence on his part, the bar of the statute does not begin to run, until the fraud is discovered, though there be no special circumstances or efforts on the part of the party committing the fraud to conceal it from the knowledge of the other party. *Booth vs. Lord Warrington*, 4 *Brown's Parlimentary Cases*, 163; *South Sea Company vs. Wymondsell*, 3 *Peere Williams*, 143; *Hovenden vs. Lord Annesley*, 2 *Schoales & Lefroy*, 634; *Sherwood vs. Sutton*, 5 *Mason*, 143; 2 *Swanst.*, 62; *Petre vs. Petre*, 1 *Drewry*, 393; *Langley vs. Fisher*, 9 *Beav.*, 90; *Lewis vs. Thomas*, 3 *Hare*, 26; *Bailey vs. Glover*, 21 *Wallace, U. S. Rep.*, 346. And this is the rule too, when such Courts are dealing with legal demands, in regard to which they *obey strictly the very terms of the Statute of Limitations*.

Whether a party can rely upon the fraud of the defendant, in an *action at law*, to avoid the operation of the statute, is a question in regard to which there is some conflict of decision in this country. Some Courts hold, that the equitable principles upon which fraud is allowed in equity in such cases, are not applicable in actions at law. Others, on the other hand, maintain that the Statute of Limitations was intended to suppress, and not to be used as a shield for fraud, and that whenever a party is injured by the fraud of another, and such fraud is concealed from him, the statute does not begin to run until he has, or might with ordinary diligence have discovered the fraud. Such cases, they hold are not within the meaning and operation of the statute, and the injured party may rely upon fraud in a Court of law as well as in a Court of equity. *Turnpike Co. vs. Field*, 3 *Mass.*, 201; *Welles vs.*

*Fish*, 3 *Pick.*, 74; *Jones vs. Conoway*, 4 *Yeates*, 109; *Keesh vs. Barr*, 1 *Watts*, 110; *Pennock vs. Freeman, Id.*, 401; *Mitchell vs. Thompson*, 1 *McLean*, 96; *Carr vs. Hilton*, 1 *Curtis*, 390; *Bowman vs. Sanborn*, 18 *New Hamp.*, 208; *Cole vs. McGlarthy*, 9 *Greenleaf*, 131; *Morton vs. Chandler*, 8 *Greenleaf*, 9; *McDowell vs. Young*, 12 *Serg. & Rawle*, 128; *Keesh vs. Barr*, 1 *Watts*, 110; *Harrisburgh Bank vs. Foster*, 8 *Watts*, 12.

It has been questioned whether the English cases go to the extent of deciding, that a party may reply fraud to a plea of limitations in an action at law, and although the question was not directly raised by the pleadings in *Bree vs. Holbach, Doug.*, 655; *Clarke vs. Hougham*, 3 *Dowing & Ryland*, 322, and *Granger vs. Granger*, 5 *Barnwall & Creswell*, 149, yet it is clear from what was said by the several Judges in these cases, that a replication of fraud would have been sufficient.

Lord MANSFIELD said: "There may be cases too, which fraud will take out of the Statute of Limitations." *Doug.*, 654.

BAYLEY, J., "The question how far fraud may prevent the operation of the Statute of Limitations, does not properly arise in this case. In order to take advantage of fraud, there should have been a special replication."

BEST, J., "To the next question, it has been answered that fraud prevents the operation of the Statute of Limitations. It is not necessary to decide that now, but I think that I would have done so, had the replication raised the point." *Clarke vs. Hougham*, 2 *B. & C.*, 149.

In this State, it was held in the case of the *Negro Franklin*, 8 *Gill*, 331; that fraud could not be replied to a plea of limitations in *an action at law*, and it is obvious we think, that the Act of 1868, was passed for the purpose of enabling parties to set up the fraud of the defendant in a Court of law as well as in a Court of equity.

Unless then the terms of the Act plainly show a contrary intention, it is but fair to presume, the Legislature

meant that the nature and character of the fraud which a party was thus allowed to plead, should be governed by the well settled rules of law on the subject, as recognized by Courts of equity and Courts of law, at the time when the Act was passed. The inquiry then is, whether the language of the Act, requires or justifies a contrary construction?

It says, it is true, "cause of action of which" a party "has been kept in ignorance by the fraud of the adverse party." Does this mean, however, that in all cases, a party must commit a fraud *distinct* from, and *independent* of the *original fraud*, for the purpose of keeping the injured party in ignorance of his cause of action, and that the *mere concealment* of the fraud is insufficient? We think not. Where one practices fraud to the injury of another, the *subsequent concealment* of it from the injured party is *in itself a fraud*, and if he is thereby kept in ignorance of his cause of action, he is kept in ignorance by the "fraud of the adverse party."

The principle upon which it has been held that cases of this kind, are not within the Statute of Limitations, is that it would not only be subversive of good morals, but contrary to the plainest principles of justice, to permit one practicing a fraud and then concealing it, to plead the statute, when in fact, the injured party did not know, and could not with reasonable diligence have discovered the fraud. And to require the plaintiff in all cases to prove a distinct and independent fraud in addition to the original fraud, whereby a party is injured, and that the subsequent concealment of the fraud is insufficient, would in a great measure defeat what we understand the Legislature meant. For if the narrow construction contended for be correct, and a party succeeds in getting the property of another, through fraudulent representations, and concealed the fraud until limitations operates as a bar to the action, the injured party would be without remedy, although he did not

know of the fraud and could not by reasonable diligence, have discovered it. We cannot suppose the Legislature intended thus to restrict the operation of a *remedial statute,* nor do we think the terms of it require such a construction.

And when it is said in 2 *Greenleaf Evidence, sec.* 448, that it " must be alleged or proved not only that the plaintiff did not know of the existence of his cause of action, but the defendant had practiced fraud in order to prevent the plaintiff from obtaining knowledge at an earlier period," we do not understand the author as meaning that the subsequent concealment of the fraud, whereby the injured party was kept in ignorance of his cause of action, would not be sufficient.

On the contrary, the cases cited in support of the text, clearly show the author did not mean to be understood in the sense contended for by the appellee.

In the case of *Sherwood vs. Sutton,* 5 *Mason,* 143, referred to by Greenleaf, Judge STORY says:

"The point is not whether mere ignorance of the fact on the part of the plaintiff ought to remove *the bar,* but whether it is ignorance, resulting from the fraudulent concealment of the fact by the defendant, ought to have that effect."

And so in *Massachusetts Turnpike Co. vs. Field,* 3 *Mass. Rep.,* 201, PARSONS, C. J., says:

"The delay in bringing this suit, is owing to the fraud of the defendant, and the cause of action against him ought not to be considered as having accrued, until the plaintiff could obtain the knowledge that he had a cause of action. If this knowledge is fraudulently concealed from him by the defendant, we should violate a sound rule of law, if we permitted the defendant to avail himself of his own fraud."

These and other cases cited in support of the text, show that is not liable to the construction now placed upon it by the appellee. *Bree vs. Holbeck,* 5 *Doug.,* 654; *Clark*

*vs. Hougham,* 2 *B. & C.,* 149 ; *Welles vs. Fish,* 3 *Pick.,* 74 ; *Jones vs. Conoway,* 4 *Yeates,* 109 ; *Troup vs. Smith,* 20 *John.,* 40.

If then the plaintiff was induced to assign to the defendant, his interest in the firm of Skinner, Neale & Co., by fraud practiced upon him by the defendant, and such fraud was concealed from him by the defendant, whereby he was kept in ignorance of his cause of action, then in the language of the Act of 1858, his right to bring the suit, shall be deemed to have first accrued at the time when such fraud shall or with usual and ordinary diligence might have been discovered.

Such being our construction of the Act of 1868, the only remaining question is, whether the Court was right in taking the case from the jury. In so doing, the Court said, admitting all the evidence offered by the plaintiff to be true, and adding thereto, every inference that might be fairly and legitimately deduced therefrom, it was insufficient to support the replication.

We have carefully examined the proof to be found in the record, and without intimating an opinion in regard to the weight of it, we think it was legally sufficient to warrant the Court in submitting the case to the finding of the jury.

We see no objection to the plaintiff's first prayer, but the second does not, in our judgment, submit to the jury fully and distinctly, all the facts relied on to prove the alleged fraud. We do not understand the plaintiff as contending, that the manner in which the notes were obtained by the defendant, and the subsequent threat to have them protested, were in themselves sufficient, but that taken in connection with the alleged false representations that the notes had been sent by the holders thereof to the bank for collection, and that they would be protested in case of non-payment, together with other facts offered in evidence, were sufficient to prove a plan deliberately and fraudulently

conceived by the defendant, and successfully carried into execution, whereby the plaintiff was induced to transfer his interest in the firm of Skinner, Neale & Co. to the defendant.

Being of opinion that the Court erred in refusing the plaintiff's first prayer, and granting the first prayer of the defendant, the judgment will be reversed and a new trial awarded.

*Judgment reversed, and*
*new trial awarded.*

(Decided 2nd March, 1877.)