# THE STIEFF COMPANY *vs.* JOHN J. ULLRICH *et al.*

*Laches—Conveyance to Wife in Fraud of Creditors—Limitations—Failure to Exercise Diligence to Discover Fraud.*

When a party neglects to enforce payment of a claim, although within his power to do so, for more than four years after it became due, and until after the death of the debtor, his laches disentitles him to relief in equity.

A man borrowed from the plaintiff, his employer, a sum of money with which to purchase a house, promising to take the deed of it in his own name, so that the property would be security for the loan, and he gave a promissory note for the amount borrowed. The house so purchased was conveyed to the man and his wife as tenants by the entireties, and the deed

was recorded. He died four years afterwards, without having paid the loan, and his wife died soon thereafter. Plaintiff's bill in this case alleged that the conveyance was thus made for the purpose of defrauding him and asked that his claim be declared a lien on the property. Code, Art. 45, sec. 1, provides that no acquisition of property passing to a wife from her husband shall be valid if made in prejudice of the rights of his creditors, who, however, must assert their claims within three years after the acquisition of the property by the wife. *Held,* that the wife acquired this property when the deed creating the tenancy by entireties was made, and that this statute as well as his laches is a bar to the plaintiff's demand.

When a right of action is fraudulently concealed by one party the statute of limitations does not begin to run until the other party either discovers the fraud, or by the exercise of ordinary diligence could have discovered it. The mere fact that he was in ignorance of the fraud does not prevent the running of the statute if he failed to exercise ordinary care to ascertain his rights.

*Decided June 30th, 1909.*

Appeal from the Circuit Court of Baltimore City (HEUISLER, J.).

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE, WORTHINGTON and HENRY, JJ.

*Edward M. Hammond* (with whom was *Roger T. Gill* and *Albert S. Gill* on the brief), for the appellant.

*William S. Bryan, Jr.,* and *Frederick T. Dorton,* for the appellees.

HENRY, J., delivered the opinion of the Court.

This is an appeal from a decree of the Circuit Court of Baltimore City sustaining a demurrer filed by the appellees

to a bill of complaint filed by the appellant and dismissing the bill.

The allegations are to the effect that a certain Henry Lauritzen died on the 5th day of June, 1908, and that his wife, Eliza Ullrich Lauritzen, died a few months thereafter on October 11, 1908, the latter intestate and the former leaving a will but no estate, and that neither left a child or children. On January 28, 1904, Henry Lauritzen, who was an old and trusted employee, in the establishment of the appellant, applied to the company for a loan of $2,000 for the purpose of purchasing a house and lot, stating at the time of the application that he did not desire to encumber the property which he proposed to purchase with a mortgage, but that he would take a deed for the same in his own name, so that it would remain, in the event of his death, as ample security for the repayment of the loan. At the same time he gave to the appellant a promissory note which reads as follows:

"BALTIMORE, Jany. 28th, 1904.

$2,000.

Four months after date, I promise to pay to the order of The Baltimore Sterling Silver Company Two Thousand Dollars. It is understood that this amount is to be paid by my services to the Baltimore S. S. Co. from time to time. Value received.

(Signed)     HENRY LAURITZEN."

Lauritzen purchased a house and lot on Fulton avenue in Baltimore, the deed for which, showing a consideration of $2,125, was executed, acknowledged and recorded on the 19th February, 1904. But instead of taking the deed in his own name, Lauritzen had the property conveyed to himself and wife jointly, as tenants by the entireties, and the bill alleges that it was so executed for the purpose of defrauding the appellant and that there was no consideration moving from the wife to the husband for the same. The bill further alleges that knowledge of the manner in which the conveyance was made did not come to the knowledge of the appellant until

about June 5th, 1908; that from time to time Lauritzen and his wife acknowledged the existence of the indebtedness, and after the death of the husband, the wife again acknowledged that the loan was made to her husband for the purpose of purchasing a home, that the money was so used and that she would pay it, but shortly thereafter she was taken ill and died without having done so. The administrator of Mrs. Lauritzen sold the property, with knowledge of the claim of the appellant, and being about to distribute the proceeds of sale among the heirs of the deceased, this bill was filed to annul and set aside the sale made by the administrator, to have the claim of the appellant declared a lien on the property and to enjoin the administrator from distributing the fund until the adjustment of the claim. By agreement between the parties, filed in the cause, the claim for a lien was waived and released and the same was transferred to the fund in the hands of the administrator, without affecting or prejudicing in any other way the rights of the respective parties.

The actual facts of this case may be as stated in the bill, and as admitted by the demurrer. It does not appear altogether unreasonable that Mr. Stieff, the President of the appellant company, having entire confidence in a faithful employee, may have accommodated him with a loan of $2,000 on the terms and conditions as above set forth and may have reposed in the security of feeling that the property to be purchased with the money would remain as a protection to him for the repayment of the loan upon demand, or in the event of the borrower's death. Yet even if this be true, it seems clear to us that the appellant has permitted itself to be deceived and has placed itself in a position from which a Court of equity cannot rescue it. While always ready, in a proper case, to aid the vigilant, equity will not enforce stale demands, particularly when made after the death of the parties who may be interested in contesting them. As to what will constitute laches, must depend upon the circumstances of each particular case. In the present case a note for $2,000

was given, as security for a loan, payable four months after date. It does not appear from anything set forth in the bill that the note was presented for payment at its maturity or that any demand for the same was made. More than four years are allowed to roll by, during which time the appellant paid to Lauritzen a weekly salary of $65 and though the note in terms so provides no deduction appears to have been made from such salary and credited on the note. And it was not until June 1908, after the death of Lauritzen, that the appellant discovered that the deed above referred to had been taken jointly in the names of husband and wife, and sought a settlement of the claim from the wife. The debt was not that of the wife, and no verbal promise of hers could bind her to pay it. No steps were taken to have the wife bind her property for the loan.

The note itself was out of date, except that the bill alleges that from time to time the maker acknowledged the indebtedness, though it does not show that such acknowledgment was made at such a time as would remove the bar of the statute. These circumstances do not commend themselves to a Court of equity. They are lacking not only in diligence, but in prudence. Added to them is the material fact that both Lauritzen, and his wife, who may have known of the transaction, are dead, and there is no one, except the appellant, who can testify to the facts. During the lifetime of all the parties, the debt matured, and there was no obstacle in the way of a legal enforcement of the claim. The conduct of the appellant is, we think, lacking in that degree of diligence which should call into operation the aid of equity. *Preston v. Horwitz,* 85 Md. 171; *Fetter on Equity,* 42; *Phelps' Juridical Equity,* sec. 262 et seq.; *Haddaway* v. *Hynson,* 89 Md. 313.

It may be well to add in connection with the defense of laches that, under sec. 1, Art. 45, of the Code, the appellant is barred of his right of action. The deed in this case was recorded February 19th, 1904. This suit was instituted Dec. 9th, 1908, nearly five years thereafter. The section of the

Code above referred to provides "that no acquisition of property passing to the wife from the husband after coverture shall be valid if the same has been made or granted to her in prejudice of the rights of his subsisting creditors, who, however, must assert their claims within three years after the acquisition of the property by the wife, or be absolutely barred, and for the purpose of asserting their rights under this section claims of creditors of the husband not yet due and matured shall be considered as due and matured."

There can be no doubt of the proposition that on the date of the recording of the deed the title to the entire property vested in the wife, subject to be divested, in the event of her prior death, in favor of her husband. A tenancy by the entireties is in the eye of the law the tenancy of one person, and each is seized of the whole. There has been no departure in Maryland from the common law doctrine on this subject. *Marburg* v. *Cole*, 49 Md. 402; 2 *Blackstone's Commentaries*, 182; 4 *Kent's Commentaries*, 380.

Therefore when the deed was recorded Mrs. Lauritzen became seized of the entire estate, and if the conveyance to her was for the purpose of defrauding the appellant, as charged, or any other creditor of the husband, it should have been attacked within three years from the date of its recordation.

But it is contended by the appellant that it did not discover the fact that the deed had been given to Lauritzen and wife, as tenants by the entireties, until about the time of the death of the former, in June, 1908, and that limitations should not begin to run until such discovery at that time. In the case of *Wear* v. *Skinner*, 46 Md. 257, a leading one on this subject, it is said that "when a party has been injured by the fraud of another, and such fraud is concealed, or is of such character as to conceal itself, whereby the injured party remains in ignorance of it without any fault or want of diligence on his part, the bar of the statute does not begin to run until the fraud is discovered, though there be no special circumstances or efforts on the part of the party

committing the fraud to conceal it from the knowledge of the other party."

The facts in this case show that the appellant, who, as President of a large business enterprise must be regarded as a person of intelligence, did not exercise the diligence or prudence usually observed in a transaction of such importance. He gave a check for the money and took the note as security for the same, relying upon the promise of Lauritzen to have the deed made in his own name. There was a clear breach of confidence on the part of Lauritzen, but he took no pains to conceal it. He did not keep the deed from record. The money was loaned Jany. 28th, 1904; the deed was recorded about three weeks later, on Feby. 19th following. Ordinary diligence on the part of the appellant would have caused him to look at the records, or have the deed submitted to him before it was recorded, to see that his interests were properly protected in the manner he desired. It seems to us a case of inexcusable neglect on his part. "The defence of want of knowledge on the part of one charged with laches is one easily made, easy to prove by his own oath, and hard to disprove. Hence the tendency of Courts in recent years has been to hold the plaintiff to rigid compliance with the law, which demands not only that he should have been ignorant of the fraud, but that he should have used reasonable diligence to have informed himself of all the facts." *Phelps' Juridical Equity*, sec. 265; *Foster v. Railroad*, 146 U. S. 88; 16 *Cyc*. 171 *et seq*.

We do not deem it necessary in the view we have taken to go into the question raised in the brief as to whether the note, under the circumstances, constitutes a good ground of action. But for reasons above set forth we shall affirm the decree of the lower Court.

*Decree affirmed with costs.*