Concluding the Cases of the October Term, 1915, and beginning the Cases of the January Term, 1916.

## JAMES S. DIXON ET AL.,

*vs.*

## HELEN V. DIXON, ET AL.

*Husband and Wife: Deeds between——; creditors' rights; children as creditors; laches.*

Under the Code, Art. 45, sec. 1, creditors who may be prejudiced by an acquisition of property passing to the wife from the husband, must assert their claims within three years from said acquisition, or be absolutely barred.                    p. 5

But where after such acquisition there remained property of the husband sufficient for all the then existing creditors, such transfers are not open to attack by creditors under the Statute.
p. 6

The fact that filial regard prevented certain children from attacking, in his life time, deeds made by their father, which they claimed were in violation of their rights, does not operate to extend the time for attacking such transfers after the father's death.                    p. 6

The relationship between children and their father may be pertinent as reflecting upon the general question of *laches* in reference to the enforcement of claims against him individually, but it is not a proper ground for removing the bar of the Statute of Limitations enacted and interposed for the protection of his grantees in proceedings of that character.          pp. 6-7

*Decided February 10th, 1916.*

Appeal from the Circuit Court for Dorchester County. In Equity. (STANFORD, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Clement Sullivane* and *Alonzo L. Miles,* for the appellant.

*T. Sangston Insley* and *Emerson C. Harrington,* for the appellees.

URNER, J., delivered the opinion of the Court.

The appeal in this case is from a decree dismissing a bill of complaint whose object was to procure the annulment of certain gifts made by a deceased debtor in his lifetime and alleged to have been in fraud of the plaintiffs as his creditors. From the voluminous record before us, in which the real and simple issues of the case have been encumbered with a great mass of irrelevant testimony, we have extracted the following material facts:

In the year 1883 Dr. Richard H. Dixon, of Dorchester County, was indebted on open account to Rebecca H. Stewart, the mother of his deceased wife, in the sum of $3,997.28, with interest from January 1st of that year. This account was assigned by Mrs. Stewart, on July 21, 1883, to the four children of Dr. Dixon, being her own grandchildren, in the following proportions: To Helen S. Dixon, $600 of the amount due, and the remainder to James S. Dixon, Helen S. Dixon, William Lee Dixon and Nannie S. Dixon in equal shares. A second marriage was contracted by Dr. Dixon in the year 1885, and two children, Richard H. Dixon, Jr., and Marie Dixon, were born of that union. On April 15, 1912, Dr. Dixon died, survived by his wife, Helen V. Dixon, and all of his above named children by both marriages. About two years prior to his death he acknowledged in writing the existence of the indebtedness to which we have referred. In March, 1903, Dr. Dixon made and delivered to his wife a promissory note payable to her order for the sum of $500. On April 7, 1905, he gratuitously released of record a mortgage of $4,000 which he held against her property. In January, 1907, he conveyed to her as a gift, by deed duly recorded, the home in which they were living, estimated in the evidence to be worth $10,000. Towards the close of the same year he

assigned by way of gift to his son, Richard H. Dixon, Jr., a real estate mortgage for the sum of $1,000, and to his daughter, Marie, ten shares of the capital stock of the National Bank of Cambridge, valued at $1,750, the latter transfer being confirmed in March, 1909, when this daughter became eighteen years of age. These dispositions in favor of the wife and the two younger children are sought to be set aside, in this suit by the four children of the first marriage, as being in prejudice of their rights as creditors under the assignment made to them by their grandmother in 1883.

In addition to the property involved in the transfers just mentioned, and during the period when they were being made, Dr. Dixon was the owner of real and personal estate aggregating about $14,000 in value. From 1905 to 1907 he paid more than $8,000 as surety on obligations of his son, W. Lee Dixon, who assigned $3,000 worth of securities to his father by way of partial reimbursement. The assets thus received were transferred by Dr. Dixon to his daughter Nannie as a gift, sometime in 1911, together with other securities amounting in value to $1,450. At the time of his death in 1912 Dr. Dixon's estate was worth only a few hundred dollars. After he had conveyed the home property to his wife in January, 1907, he was still the owner of real estate to the value of $7,600, and of securities to the amount of $9,900. During the year 1907 he sold his remaining realty, and at the close of that year, after he had assigned the $1,000 mortgage to his son Richard and his Cambridge bank stock to his daughter Marie, his estate consisted of personal assets having an estimated value of $8,500.

When Dr. Dixon made the various transfers to the wife and children of his second marriage, he was indebted to the plaintiffs, according to their theory, in an amount approximating $8,300 on the open account previously mentioned, the greater part of the sum thus alleged to be due representing interest charges on the original debt. The proportionate amount of this claim to which W. Lee Dixon may have been entitled was largely exceeded by the liability he incurred to

his father on account of the payments made by the latter as
his surety. The interest of Nannie S. Dixon in the claim is
likewise of much less value than the gifts she received from
her father's estate subsequently to the transfers now being
contested. It is apparent that neither of these parties can
equitably complain of donations to the defendants, as preju-
dicing the plaintiff's rights as creditors of their father, when
the benefactions they have themselves received from the
same sources have served to reduce the estate to a much
greater extent than the amounts of their respective shares of
the claim here sought to be enforced. For the purposes of
this case, therefore, the interests of the two last-named claim-
ants may be dismissed from further consideration.

The combined claims of the other two plaintiffs, James S.
and Helen S. Dixon, on account of the indebtedness stated
in the original bill of complaint, amounted with interest to
about $5,000 when the last of the gifts now in dispute was
made at the end of the year 1907. After the cause had been
set for final hearing, a petition was filed by James S. Dixon,
on May 25, 1914, asking leave, which was granted and exer-
cised, to amend the bill by incorporating in it allegations to
the effect that his father was indebted to him in the sum of
$1,893.97, upon a guardianship settlement made in 1880.
With the bill as thus amended there was exhibited a written
acknowledgment of this indebtedness signed and sealed by
Dr. Dixon on June 21, 1880, to which was appended his
admission in writing, under date of May 18, 1910, that the
debt was still owing. The bill as amended in 1914 for the
first time proposed that the deed to Mrs. Dixon for the home
property be decreed to be invalid as against the plaintiff's
claims. A separate proceeding by the same parties to have
a resulting trust as to that property declared in favor of Dr.
Dixon's first wife, under whom the plaintiff's were asserting
an interest as heirs at law, was decided adversely to their
contention, on appeal, in 123 Md. 44, since the present suit
has been pending.

The right of the plaintiffs to have the transactions in question avoided is challenged by the defendants on the grounds, first, that apart from the property embraced in the controverted gifts, the donor had an estate which was amply sufficient for the payment of his debts, and, secondly, that the causes of action now asserted are barred by limitations and laches. As a special defense to the suit, in so far as it attacks the gifts to Mrs. Dixon, the defendants invoke the statutory provision that subsisting creditors who may be prejudiced by an "acquisition of property passing to the wife from the husband after coverture * * * must assert their claims within three years after the acquisition of the property by the wife, or be absolutely barred." Code, Art. 45, sec. 1. In reply to this defense the plaintiffs testify that they had no knowledge, until after their father's death, as to the gift of the $500 note to Mrs. Dixon, or as to the voluntary character of the release to her of the $4,000 mortgage. and that with respect to the recorded deed for the home property, and the other gifts to the wife as well, their intimate relationship to the donor explains and should excuse their disinclination and omission to institute annulment proceedings within the statutory period in his lifetime. The plaintiffs also deny that they had any knowledge in reference to the stock and mortgage transfers to Richard and Marie Dixon until a short time before the filing of the bill of complaint.

There is evidence in the case tending to show that the promissory note of 1903 for $500 from Dr. Dixon to his wife was based upon a valuable consideration, but if it be treated as purely voluntary, it obviously did not prejudice any rights which the plaintiffs as creditors were entitled to assert. The proof clearly points to the same conclusion in regard to the release of the $4,000 mortgage in 1905. After these transactions the property remaining in Dr. Dixon's ownership, and readily available to his creditors, was much more than sufficient to provide for the payment of all his existing debts. No prejudice, therefore, resulted to the cred-

itors from the execution of the note and the release of the mortgage, and those dispositions in favor of the wife are unquestionably entitled to be sustained as against the present suit regardless of the defense of limitations. *Goodman* v. *Wineland,* 61 Md. 449; *Whedbee* v. *Stewart,* 40 Md. 414; *Williams* v. *Banks,* 11 Md. 198. It is not entirely certain, however, that the real estate conveyance of 1907 to Mrs. Dixon left her husband with adequate and equally available property for the payment of his debts, when the liabilities he had assumed for his son Lee are considered in connection with the claims involved in this litigation. While his remaining estate as a whole may have exceeded in value the total amount of his liabilities, yet it is doubtful whether his visible and tangible property, as readily accessible to his creditors as that conveyed to his wife, was sufficient to meet their demands if pressed at that time. *Warner* v. *Dove,* 33 Md. 586; *Bullett* v. *Worthington,* 3 Md. Ch. 99. But the deed is undoubtedly protected by the statute we have cited. The first effort to have it declared void, as being in prejudice of creditors, was made in May, 1914, more than seven years after the deed was recorded. By the explicit terms of the statute such a proceeding must have been instituted within three years after the conveyance. It is no answer to this requirement, in such a case as the present, to say that the plaintiffs were restrained by their filial regard from assailing their father's deed in his lifetime upon the ground that it was a fraud upon their rights. The consideration they observed for their father in not attempting to vacate the deed to his wife while he was living is certainly no reason for exempting their suit from the operation of the statute in order that they may defeat this provision for her benefit after he is dead. There are no special equities in the case, and there is no just principle appropriate to the facts as proven, upon which such a conclusion could be sustained. The relationship between the plaintiffs and their father may be pertinent as reflecting upon the general question of *laches* in reference

to the enforcement of their claims against him individually, but it is not a proper ground for removing the bar of a statute of limitations enacted and interposed for the protection of his *grantee* against an adverse proceeding of this character.

The suit having been thus found to be unavailing as against the disposition in favor of the wife, the question yet to be decided is whether it is maintainable for the purpose of avoiding the mortgage and stock transfers to the two younger children. These gifts, as already noted, had a total value of $2,750. It was several years after they were made that Dr. Dixon assigned to his daughter Nannie, as previously stated, securities worth $4,500. The other plaintiffs not only acquiesced in the retention of these assets by the last named sister, after the death of their father, but by affirmative acts they gave definite recognition to her rights as donee. While thus conceding the validity of these substantial gifts to their co-plaintiff, which practically exhausted their father's then remaining estate, they have proposed by this suit to render ineffectual his earlier and much less valuable donations to the children of his second marriage. This object is sought to be accomplished in aid of the enforcement to that extent of claims which have been allowed to lie dormant for nearly a generation. It would be a distinct injustice, under such circumstances, and for such a purpose, to deprive the younger children of the moderate gifts which were prompted by their father's affection and which were made and accepted in the most evident and absolute good faith. The authority of a Court of Equity will not be exerted to produce a result so manifestly inequitable.

It will be unnecessary to discuss the numerous exceptions in the record to the admission of evidence. The conclusion we have reached has taken into consideration all the proof offered on behalf of the plaintiffs, and it would not be affected by the exclusion of all the defendant's proof which might be regarded as open to any valid objection.

*Decree affirmed, with costs.*