# ALBERT H. WILSON

## *vs.*

## LOUISE N. VANDERSAAL ET AL., EXECUTRICES UNDER THE WILL OF SAMUEL W. VANDERSAAL.

*Husband and wife: deeds in defraud of creditors; time for attacking; section 14 of Article 57 and section 1 of Article 45.*

Section 14 of Article 57 as to limitations where the complainant was kept in ignorance of his rights by the fraud of the adverse party, does not affect the provisions of section 1 of Article 45 of the Code, as to the time within which the rights of creditors to attack a deed from a husband to his wife must be exercised, unless there was some act or omission on the part of the wife which kept them in ignorance of the alleged fraudulent transfer.                                    p. 490

Such provisions have no application when the deed complained of was promptly recorded and where there was no concealment of the fraud by keeping it off record.        p. 491

A party guilty of negligence or laches is not entitled to equitable relief.                                    p. 492

*Decided April 24th, 1919.*

Appeal from the Circuit Court for Garrett County. (BOYD, C. J.).

The cause was argued before BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and ADKINS, JJ.

*A. Taylor Smith,* for appellant.

*Albert A. Doub* (with whom was *John T. Mitchell* on the brief), for the appellees.

THOMAS, J., delivered the opinion of the Court.

This appeal is from the decree of the Circuit Court for Garrett County sustaining the demurrer to and dismissing the third amended bill of complaint of the appellant.

The suit was instituted by the appellant against Louisa M. Vandersaal, the widow of Samuel W. Vandersaal, Elizabeth McCloskey, and the devisees and executrices under the will of Samuel W. Vandersaal for the purpose of having two deeds—one from the said Samuel W. Vandersaal and Louisa M. Vandersaal to Elizabeth McCloskey, and the other from Elizabeth McCloskey to Louisa M. Vandersaal—declared null and void because made with the view of defrauding the creditors of Samuel W. Vandersaal, and to have the property thereby conveyed, located in Garrett County, Maryland, sold for the payment of his debts.

The deeds were dated the 18th of November, 1908, were acknowledged in the State of Pennsylvania, and were recorded among the Land Records of Garrett County on the 27th of November, 1908. Section 1 of Art. 45 of the Code declares

"that no acquisition of property passing to the wife from the husband after coverture shall be valid if the same has been made or granted to her in prejudice of the rights of his subsisting creditors, who, however, must assert their claims within 3 years after the acquisition of the property by the wife, or be absolutely barred, and, for the purpose of asserting their rights under this section, claims of creditors of the husband not yet due and matured shall be considered as due and matured."

The original bill was not filed until the 27th of November, 1916, but the appellant relies upon section 14 of Article 57 of the Code, which provides:

"In all actions where a party has a cause of action of which he has been kept in ignorance by the fraud of the adverse party, the right to bring suit shall be deemed to have first accrued at the time at which such

fraud shall or with usual or ordinary diligence might have been known or discovered."

The only allegation in the bill suggesting any concealment by Mrs. Vandersaal of the execution of the deed is the averment that

"the said Vandersaal informed your orator at various times after the making of the aforesaid deeds that he, the said Vandersaal, was the owner of said property, and that the same stood in his name, and that all of this, including the statements as to ownership, made to your orator by the said Vandersaal was known to the said Louisa M. Vandersaal, his wife, and was known by her to be false."

We entirely concur in the views expressed and the conclusions reached in the following opinion delivered by Chief Judge Boyd, in the Court below, which we adopt as the opinion of this Court, and for the reasons therein stated will affirm the decree appealed from.

"This case is now before me on a demurrer to a third amended bill of complaint, which was filed on December 22nd, 1917, the original bill having been filed November 27th, 1916. The demurrer assigns many grounds for it, amongst others laches and the statute of limitations.

"The case presents a striking illustration of the importance of the rule against laches, as there have not only been material changes in the several bills of the amounts claimed to be due, but also in the allegations as to what the plaintiff alleged Vandersaal told him in reference to the purchase price the latter received from the property in Pittsburg. It is only just to the plaintiff to say that he did not claim to be altogether accurate in his first bill, but as the $26,250.00 found by the Alabama Court to be due, as shown by an exhibit filed with this bill, included interest from October 25th, 1907, there could not have been more than $16,000 or $17,000 of principal found to be due as of that date, and as there was therefore a difference of forty or more thousand dollars be-

tween what the plaintiff originally claimed to be due and
what he now says is a final judgment which 'determines the
correctness and the amount of the claim of your orator
against the said Samuel W. Vandersaal and his estate,' it
would be difficult to find a more striking object lesson of the
danger of a Court granting relief on a stale claim, unless the
amount is shown to be at least approximately correct, and
excuse for the delay is satisfactorily established.

"It may be well to say in passing that there is nothing in
the record of the judgment of the Alabama Court which
shows how the amount was ascertained, and that, moreover,
this is not a proceeding to enforce the judgment.

"There was filed with the amended bill, and made part of
it as 'Exhibit No. 1,' an agreement dated January 2nd, 1904,
which recites that the parties therein named were creditors of
the H. C. Cyphers Provision and Ice Company in the fol-
lowing amounts:

" 'A. H. Wilson in the sum of $62,830.00; Samuel W.
Vandersaal in the sum of $22,156.00, being the amount of a
bond and mortgage,' which is described in said agreement,
and which is the mortgage under which the sale was made to
Vandersaal; 'Hugh Murphy in the sum of $14,166.85; R. A.
and James Balph in the sum of $10,000.00, and William J.
Kennedy in the sum of $4,125.92.' The agreement recites
that Vandersaal was foreclosing his mortgage and was about
to sell the property described therein; that there were four
mortgages held by the City Deposit Bank prior to that of
Vandersaal, also one held by Wilson, assigned of record to
Vandersaal, and also certain taxes due and costs connected
with the sale; that it was the desire of the parties to pur-
chase the property at the foreclosure sale (which under the
Pennsylvania practice was made by the sheriff under a writ
of *scire facias*), and upon a re-sale of it to pay the amounts
advanced to purchase the property and then the said respec-
tive claims against the Provision and Ice Company, and
after payment of said claims to divide amongst the said par-

ties, except Kennedy, any excess realized. It was further
agreed that Vandersaal was to purchase the property and
hold the legal title to it 'for the use and benefit of the par-
ties hereto, as hereinafter set forth,' and that in the event of
the purchase by Vandersaal the parties thereto should advance
sufficient to pay the amount of the bid in the following pro-
portions: 'Said Wilson and Vandersaal, fifty per cent.
(50%); Hugh Murphy, twenty-five per cent. (25%); R. A.
and James Balph, twenty-five per cent. (25%), and William
J. Kennedy, $4,000.' It was then agreed as follows:

> " 'It is further agreed, that in case said Vander-
> saal becomes the purchaser of the said sale, the said
> land shall be resold by him at such time and upon
> such price and terms as the parties hereto may here-
> after mutually agree upon, and the net proceeds of
> cash resale shall be distributed as follows: First—To
> the payment of the sum advanced by the parties hereto.
> Second—To the payment of the respective claims of the
> parties hereto, pro rata until the same be fully paid.
> Third—Any excess remaining after payment of the
> foregoing amounts, to be distributed among the parties
> hereto as follows: A. H. Wilson and Samuel W. Van-
> dersaal, eighty per centum (80%); Hugh Murphy, ten
> per centum (10%); R. A. and James Balph, ten per
> centum (10%); except said William J. Kennedy, who
> is not to receive any part of said profits.'

"The property was purchased by Vandersaal, and a deed
dated January 9th, 1904, was made by the Sheriff to him—
the consideration stated being $8,136.16. On May 3, 1904,
he gave a mortgage to the Peoples Savings Bank for $75,000
payable three years after date, and paid off prior mortgages,
which according to the bill amounted to $60,175.00. The
exhibits filed show the mortgages were to secure $65,000.00,
but there may have been something paid on one or more of
them. He then leased said property to the East Liberty
Home Dressed Meat Company for three years, receiving,
according to the bill, a total rent of $37,500.00. He paid

the claims of Balphs, Murphy and Kennedy, which the bill alleges amounted to $21,305.00; $10,500.00 taxes and insurance and $12,000.00 interest on the mortgage.

"At the oral argument attention was called to the fact that the agreement of January 2nd, 1904, was signed 'A. H. Wilson, by S. W. Vandersaal,' but, as we have seen, the bill makes the agreement a part of it, and there is no suggestion in the bill that it was not authorized by Wilson, or was not just as had been agreed upon. All of the other parties signed it, and acted under it. If there was any question about it, the Court should have been so informed in the bill, and it could not be made a part of the bill for the plaintiff's purposes when it suited him, and rejected as to other parts, without at least making proper allegations to show wherein it was wrong. We must, therefore, treat it as for what it purported to be, and it on its face is a direct and distinct contradiction of the allegation in the bill that Vandersaal had no interest in the property. Indeed, the plaintiff's whole claim is based on the theory of that agreement, except the part which states what was due Vandersaal on the bond and mortgage, for which the sale was made by the sheriff under the writ of *scire facias*. It would be going to an extreme length and contrary to the decisions of this State, to permit a party to wait for over twelve years and then undertake to set aside in part an agreement under seal, such as this is, by parol proof after the death of the other party, when he relied on the agreement for his own purposes and did not suggest that his signature was not authorized, or that the statements in the agreement had been fraudulently inserted. We must for the purposes of this demurrer treat it as an agreement between the parties thereto, which the bill in effect alleges it to be, and the plaintiff can not be permitted to now contend that in fact nothing was due Vandersaal, when the agreement is to the contrary, and provides for the distribution of the fund according to its terms. Every presumption is in favor of the agreement, a copy of which is filed with the bill, and presumably the original was either in the hands of the plaintiff or he had access

to it, so that he did know or could have known years before this bill was filed what its contents were.

"We might add here that the original bill and the first amended bill stated that it was agreed that Vandersaal was to be paid $5,000 for his services, but that seems to have dropped out of the case in the last two bills, and no credit is given to him for any compensation in the statements of the indebtedness alleged to be due by him. If Vandersaal was entitled to $22,156.00 out of the proceeds of the sale of the property, as per the agreement, and $5,000 for his services, according to the first two bills, there could not have been much, if anything, due the plaintiff by him on November 18th, 1908, when the deeds complained of in this case were made, even if the purchase money alleged to have been received by Vandersaal is correctly stated in the bill, and the agreement of October 23, 1907, is ignored. The latter agreement, which is filed with the bill and marked Exhibit No. 7, is a complete answer to the claim of the plaintiff, unless it be set aside and ignored. That was executed under seal by Wilson and Vandersaal. It recites that a package referred to contains three certificates of stock of the Pittsburg Ice Company for 100 shares each, dated April 25th, 1907, and made to the order of S. W. Vandersaal, 'and were received by him in part payment of the Provision and Ice Plant * * * sold by him to John W. Hubbard'; that Hubbard had retained a like certificate for 100 shares to be held by him until a water tax on the property sold to him was paid, when the certificate was to be given to Vandersaal and be put into the package. It then contains the following provisions:

" 'These four certificates are hereby accepted by A. H. Wilson as a full settlement of any and all claims he had or may have against Vandersaal on account of any and all transactions arising out of, by or through any dealings connected with this property in any manner whatsoever. This package also contains a quit claim deed made by A. H. Wilson and his wife to S. W. Vandersaal, which said deed, together with this agree-

ment, is hereby accepted by Vandersaal as evidence of such settlement in full.'

"It was also agreed that in order that Vandersaal might represent the stock in the directorate, the certificates should not be transferred upon the books of the company, but were to remain in the package for three years from April 25, 1907, or until such other time as may hereafter be agreed upon between Vandersaal and Wilson, and at the end of such term Wilson is to take full possession of the certificates and so relieve Vandersaal of further responsibility. Vandersaal also agreed to account to and pay over to Wilson all dividends and profits derived from said stock from time to time as they were received by him.

"It will be thus seen that Vandersaal was to hold the certificates for those shares of stock, under an agreement with Wilson until April 25, 1910, unless another agreement was made, which is not alleged in the bill to have been done. There was, therefore, no indebtedness on November 18, 1908, when the deeds involved in this case were made, from Vandersaal to Wilson on account of those 400 shares, and if it be said that the remaining 100 shares were not accounted for, the agreement of October 23, 1907, had been in force for a year and had not been set aside or changed in any way. There is nothing in the bill to show that the plaintiff did not have full opportunity to acquaint himself with all of the facts in connection with the sale of the Pittsburg property. He must have known what was in the agreement, and it was inexcusable on his part not to have informed himself as to the actual facts before entering into it, especially if it be true that Vandersaal had prior to the date of the agreement refused to tell him what the consideration for the property was and what rents and profits from it he had received, as the bill filed in the Court of Common Pleas of Allegheny County, Pa., filed as an exhibit with this bill, alleges. That was enough to put him on inquiry, and he could have ascertained from the purchaser, Mr. Hubbard, what the considera-

tion was, just as well then before he executed the release as now. Hubbard lived in Pittsburg, and there is no suggestion in the bill that the plaintiff could not then have obtained from him all of the facts. We will not quote it, but what was said in *Smith* v. *Humphreys,* 104 Md. 285, on page 290, is very applicable. It must be conceded that there can be no relief in this case unless the release in the agreement on October 23, 1907, be cancelled, especially as it is now sought to set aside deeds which vested the property in the wife. If we waive all questions about the sufficiency of the allegations and prayers in the bill to enable the Court to set aside this agreement, which was admittedly made, and intended to be made as therein stated, if otherwise entitled to have that done, the conduct of the plaintiff is a complete bar to such relief. It would be putting a premium on negligence to grant it under the circumstances of this case. Even after he admits that he had knowledge of the alleged fraud of Vandersaal (in 1914), he did nothing towards subjecting this property to his claim until the spring of 1916, when he issued an attachment, but did not file the original bill in this case until November 27, 1916, which was after the death of Vandersaal—although he did institute proceedings in Pennsylvania and Alabama. This plaintiff was not only guilty of gross negligence in the execution of the agreement, but also in not obtaining further information between October 23, 1907, and 1914, when he says proceedings by other parties against Vandersaal caused him to make investigations. Unless he had prior to that reason to suspect Vandersaal, it is difficult to understand why those proceedings should have suggested that he had received more compensation for the Pittsburg property than he told him about. If there was any reason for it, the bill does not disclose it. He was also guilty of laches in not proceeding sooner in this case, after he says he discovered the fraud in 1914. This is a very different case from that of *Beachey* v. *Heiple,* 130 Md. 683.

"But in addition to what I have said, I am of opinion that Section 1 of Article 45 of the Code is an insuperable barrier to a recovery under this bill. That section expressly pro-

vides that creditors of a husband who have been prejudiced
by the transfer of property to the wife 'must assert their
claims within three years after the acquisition of the prop-
erty by the wife, or be absolutely barred.' It is contended,
however, that Section 14 of Article 57 is an answer to that.

"Without stopping to consider the full meaning of that sec-
tion as applicable to ordinary cases, it can not be contended
that the transfer to the wife kept the plaintiff in ignorance of
the alleged fraud committed by Vandersaal in reference to
the Pittsburg property. Nor can the fact, if it be conceded
to be a fact, that the transfer to her was in prejudice of the
rights of subsisting creditors of the husband remove the bar
of the statute which expressly says that if that be so, they
'must assert their claims within three years after the acquisi-
tion of the property by the wife, or be absolutely barred.' It
is equally clear that Section 14 of Article 57 does not apply
to Section 1 of Article 45 merely because the transfer was
made to hinder, delay or defraud the creditors, for if a deed
is made by a husband to his wife, without sufficient consid-
eration, to the prejudice of his subsisting creditors, the legal
effect of it is to delay, hinder or defraud his creditors, as has
been often said in this State.

"But in *Stieff Co.* v. *Ullrich,* 110 Md. 629, 654, after ex-
plaining what a tenancy by the entireties is, the Court said:
'Therefore, when the deed was recorded Mrs. Lauritzen be-
came seized of the entire estate, and if the conveyance to her
was *for the purpose of defrauding* the appellant, as charged,
or any other creditor of the husband, it should have been
attacked within three years from the date of its recordation.'
In that case the husband had borrowed money to buy a prop-
erty which he agreed he would take in his own name, so as to
secure the loan, but he took the deed in the name of his wife
and himself as tenants by the entireties. As he died first, it
became vested in her. The bill, a demurrer to which was
sustained, alleged that it was made to the husband and wife
for the purpose of defrauding the plaintiff; that there was no
consideration moving from the wife to the husband for it;
that the plaintiff did not acquire knowledge that it was made

to the two until more than three years after the deed was recorded; that the wife and husband from time to time acknowledged their indebtedness, and after the death of the husband the wife acknowledged that the loan was made for the purpose of purchasing the home; that it was so used, and she would pay it, but shortly afterwards she died without having done so.

"The Court of Appeals held that the plaintiff was not entitled to relief.

"In addition to what we have quoted above, see what the Court said on page 635, including the quotations from *Foster* v. *Railroad*, 146 U. S. 88, in *Phelps' Jurid. Equity,* Sec. 265. The President of the Stieff Company unfortunately had too much confidence in Lauritzen, as Wilson had, according to his allegations in Vandersaal.

"It is clear that Section 14 of Article 57 is not an answer to the express provision in Section 1 of Article 45, unless at least there was some act or omission on the part of the wife which kept the plaintiff in ignorance of the alleged fraudulent transfer, which with usual or ordinary diligence might not have been known or discovered. The deeds were recorded nine days after they were executed, and hence it can not be said that there was a concealment of the fraud by keeping them off the record, and the fraud was not of such character as to conceal itself.

"The object of the statute would be defeated, if it was necessary to prove actual knowledge of the transfer. The plaintiff, as well as everybody else, had constructive notice of it, and to hold otherwise would make the record of deeds useless, and lessen very much the value of this statute, if not wholly defeat its purpose. What is said in the bill as to what Vandersaal informed the plaintiff, after the deeds were made, as to his ownership of the property, etc., and that the statements were known to the wife, and known by her to be false, is certainly not a sufficient reply to the statute. The bill does not say when such statements were made—whether within three years from the time the deeds were recorded, or

whether Mrs. Vandersaal had any knowledge within that time of such statements made by her husband. If she knew of them or made such statements herself after the three years had expired—after the plaintiff was barred—how could it be said that they prevented the plaintiff from seeking relief within the three years fixed by the statute? The plaintiff could not truthfully say that they were made within the three years, which expired in November, 1911, if what the bill says in reference to when he became aware of the fraud of Vandersaal is true, for in order to excuse his laches he alleges he did not know of the fraud until 1914. As we have seen, the plaintiff had released Vandersaal from all claims on account of the Pittsburg property on October 23, 1907, and that release was still in effect and not in any way questioned until 1914. It would be impossible to infer—much less conclude—from anything in the bill that Mrs. Vandersaal was during the three years endeavoring to conceal from the plaintiff the fact of the transfer, or trying to mislead him. There was no occasion for her to do so, even if she had been willing. It would be asking a great deal of the Court to say that, although the plaintiff did not know that Vandersaal had been guilty of fraud in the transaction between them, yet his wife did, but we are not in the consideration of this branch of the case concerned in the question whether Vandersaal did defraud the plaintiff, but whether his wife was guilty of such fraud *in reference to the transfer of the property* as to remove the bar of the statute. Of course, what the bill alleges as to what L. T. Yoeder said can not be considered. If there was anything to cause the plaintiff to inquire into the ownership of the property within those three years, then unquestionably he was guilty of laches in not proceeding sooner to set the deeds aside.

"I have not thought it necessary to refer to many of the decisions in this State, as the law is too well settled to require that, but for reasons I have given I must sustain the demurrer, and as I can see no reason for again granting the plaintiff leave to amend I will dismiss the bill."

                              *Decree affirmed, with costs.*