CITIZENS NATIONAL BANK OF HAVRE de GRACE,
Etc. *v.* LEFFLER

[No. 179, September Term, 1961.]

*Decided April 10, 1962.*

*Motion for rehearing filed April 16, 1962, denied April 18, 1962.*

The cause was argued before HENDERSON, PRESCOTT, HORNEY, MARBURY and SYBERT, JJ.

*William O. Doub* and *Ronald T. Osborn,* with whom were *Francis A. Michel* and *T. Leo Sullivan* on the brief, for the appellant.

*Franklin Somes Tyng,* with whom were *A. Freeborn Brown* and *T. Carroll Brown* on the brief, for the appellee.

MARBURY, J., delivered the opinion of the Court.

The plaintiff below has appealed from an order of the Circuit Court for Harford County sustaining without leave to amend the appellee's demurrer to the bill of complaint in a suit to set aside an alleged fraudulent conveyance.

This case involves the question is the appellant's action

against the appellee wife, for alleged fraudulent conveyance from husband to wife, absolutely barred by the provisions of Code (1951), Article 45, Section 1,[1] which requires creditors to assert their claims within three years after the acquisition of the property by a married woman from her husband, the conveyance in question having been made on October 14, 1946, and suit having been instituted on December 1, 1955; and there being no wrongdoing alleged on the part of the wife. The facts alleged in the bill of complaint, and shown in the exhibits filed therewith, may be briefly summarized.

William A. Leffler, who died during the pendency of the case in the lower court, was married to Vesperina M. Clark, also deceased, many years prior to these proceedings. On March 31, 1927, while William was married to Vesperina, they acquired fee simple title, as tenants by the entireties, to a lot and premises known as 904 South Washington Street, in Havre de Grace, Harford County, Maryland, which is the subject of this suit. Vesperina died on March 16, 1941, vesting title to the property in William alone, by right of survivorship. On November 24, 1943, he married Mary Fahey Clark, a codefendant and the appellee here. On October 14, 1946, William conveyed the subject property, through straw conveyances, to himself and the appellee, as tenants by the entireties. Both deeds effecting the transfer were recorded on October 16, 1946. The bill states no consideration was given by Mrs. Leffler, nor was any received by her husband as a result of this conveyance.

At the time of the conveyance Leffler was insolvent and greatly in debt to his employer, the Citizen's National Bank, as a result of embezzlement, misappropriation, and false entries made in its books and records by him for a period of at least twenty years, which was subsequently established to be $94,945.57, the books and records of the bank having been destroyed up to a period of three or four years prior to December 20, 1954, by or under the instructions of Leffler, or at least with his full knowledge and acquiescence. The cause of action resulting from this situation was fraudulently concealed

1. Unchanged in Code (1957).

by Leffler until its discovery by the employer bank on or about that date, when he was dismissed from his position as executive vice-president, after being employed by the bank for approximately fifty years.

A judgment was entered in favor of the appellant against William A. Leffler in the Circuit Court for Harford County, on September 7, 1955, in the sum of $97,794.04, which amount had been paid under the bond of the United States Fidelity and Guaranty Company. The U. S. F. & G. Co. later became assignee of the bank, and is equitable plaintiff in this case.

On May 26, 1955, Leffler and the appellee, while federal charges were pending against him, to which he afterwards pleaded guilty and was fined and imprisoned, conveyed title to the Washington Street property to Frederick J. Hatem and Arianna W. Hatem, his wife, for a total consideration of $38,500. A purchase money mortgage for $25,000 of that amount was executed in favor of the appellee only. Counsel for the appellant stipulated that the Hatems were bona fide purchasers of the property, and the lower court sustained a demurrer filed on their behalf without leave to amend, subject to the agreement of counsel that all payments on account of the mortgage from them to the appellee would be continued to be made by the Hatems into a special account in the Citizen's National Bank of Havre de Grace pending the outcome of these proceedings.

The special relief now sought by the appellant is that the mortgage, and all payments made pursuant to it into the special acount, be assigned to the U. S. F. & G. Co. to be credited on account of its judgment against William A. Leffler.

The chancellor below sustained the appellee's demurrer on the ground that the claim of the appellant was absolutely barred by the provisions of Code (1951), Article 45 (Husband and Wife) Section 1, which so far as applicable to this case provides in part:

> "The property, real and personal, belonging to a woman at the time of her marriage, and all the property which she may acquire or receive after her marriage, by purchase, gift, grant, devise, bequest, des-

cent, * * * or in any other manner, shall be protected from the debts of the husband, and not in any way be liable for the payment thereof; provided, that no acquisition of property passing from one spouse to the other, shall be valid if the same has been made or granted in prejudice of the rights of subsisting creditors, *who, however, must assert their claims within three years after the acquisition of the property, or be absolutely barred,* and, for the purpose of asserting their rights under this section, claims of creditors not yet due and matured shall be considered as due and matured." (Italics supplied.)

Having a direct bearing upon the effect of Article 45, Section 1, as it relates to the law of fraudulent conveyances, is Code (1951), Article 39B (Fraudulent Conveyances), Section 14,[2] which provides:

"All Acts or parts of Acts inconsistent with this Act are hereby repealed. But nothing herein shall be construed to repeal * * * the law relating to fraudulent conveyances from husband to wife as contained in Article 45, Sections 1, 2 and 11 * * *."

It is, therefore, seen that Article 45, Section 1 is still in full force and effect. But the appellant relies upon Code (1951), Article 57 (Limitations of Actions), Section 14,[3] which states:

"In all actions where a party has a cause of action of which he has been kept in ignorance by the fraud of the adverse party, the right to bring suit shall be deemed to have first accrued at the time at which such fraud shall or with usual or ordinary diligence might have been known or discovered."

The appellant claims that the statute of limitations did not begin to run until Leffler's peculations were discovered in December 1954, rather than as claimed by the appellee, from the

---

2. Substantially unchanged in Code (1957).
3. Unchanged in Code (1957).

date of the recording of the deeds transferring title from Leffler alone, to him and the appellee as tenants by the entireties. It is, of course, true that unless the transfer in 1946 of the Washington Street property, which was his only substantial asset, can be successfully attacked by a creditor, any transactions with Leffler alone could not give rise to potential claims upon the entirety property. *Alexander v. Hergenroeder,* 226 Md. 559, 174 A. 2d 580; *M. Lit, Inc. v. Berger,* 225 Md. 241, 170 A. 2d 303.

The effect of the transfer was to vest in the wife, as well as in the husband, the entire title to the property during their joint lives, with the right of continued and complete ownership in the surviving spouse. Such an acquisition of property by the wife is within the purview of Article 45, Section 1. The limitation of time which it imposes in absolute terms upon the rights of creditors to contest conveyances from husband to wife has been repeatedly applied. *Davis v. Harris,* 170 Md. 610, 185 Atl. 469; *Hertz v. Mills,* 166 Md. 492, 171 Atl. 709; *United States Fidelity & Guaranty Co. v. Shoul,* 161 Md. 425, 157 Atl. 717; *Nimmo v. Blick,* 128 Md. 326, 97 Atl. 636; *Dixon v. Dixon,* 128 Md. 1, 96 Atl. 1027, *Stieff Co. v. Ullrich,* 110 Md. 629, 73 Atl. 874.

As applied to a conveyance from husband to wife through a straw party this Court, where the fraud did not conceal itself, has in several cases construed the meaning of this section to be that the deed conveying such property must be attacked within three years from the date of its recordation. *United States Fidelity & Guaranty Co. v. Shoul, supra; Nimmo v. Blick, supra; Stieff Co. v. Ullrich, supra.*

The appellee relied upon the case of *Wilson v. Vandersaal,* 134 Md. 481, 107 Atl. 177, which the trial court considered as authority for sustaining the appellee's demurrer. In that case, at page 491, it was said:

> " 'It is clear that Section 14 of Article 57 is not an answer to the express provision in Section 1 of Article 45, unless at least there was *some act or omission on the part of the wife which kept the plaintiff in ignorance of the alleged fraudulent transfer,* which

with usual or ordinary diligence might not have been known or discovered. The deeds were recorded nine days after they were executed, and hence it can not be said that there was a concealment of the fraud by keeping them off the record, *and the fraud was not of such character as to conceal itself.'*" (Italics supplied.)

We think the holding in the *Wilson* case, as applied to the facts in the instant case should be distinguished upon a proper consideration of the phrases italicized immediately above. In *Wilson* it was expressly found that the complainant was guilty of laches and that he should have discovered any fraud practiced upon him by the exercise of ordinary diligence within three years after the deed was recorded. In other words, this Court recognized that the recording was constructive notice of the conveyance but it was certainly not held that this would supply constructive notice of any concealed fraud such as the embezzlements involved in the case at bar. As an additional ground for decision the opinion in *Wilson* construed Article 57, Section 14 and Article 45, Section 1, but carefully inserted the phrases with reference to some act or omission on the part of the wife which kept the plaintiff in ignorance of the alleged fraudulent transfer, and that the fraud was not of such a character as to conceal itself.

It is clear that the alleged fraud in this case was of a character to conceal itself. Leffler's defalcations were kept hidden until they were discovered by the bank in December 1954. The facts alleged in the bill of complaint indicate that the fiduciary relationship existing between Leffler and the bank prevented the discovery of the fraud over a long period of time. This is apparent because the books were destroyed, either by his order or at least with his knowledge and acquiescence, covering a period up until three or four years before the fraud was discovered. The means by which the fraud was kept concealed indicates a well designed scheme on the part of a bank official to prevent discovery of his fraudulent acts. 34 Am. Jur., *Limitation of Actions*, § 234. This would not justify an inference that the bank by the exercise of usual or ordinary diligence might have known or discovered his fraud. *Piper v.*

*Jenkins,* 207 Md. 308, 113 A. 2d 919, and cases there cited. 34 Am. Jur., *Limitation of Actions,* § 231. Nor is there apparent unreasonable delay in the enforcement of the bank's rights after they became known. *Sears v. Barker,* 155 Md. 323, 330, 141 Atl. 908. Cf. *Schuck v. Bramble,* 122 Md. 411, 89 Atl. 719. See generally Annot., 173 A.L.R. 576, *Limitations —Effect of Concealment,* particularly § 21, *Banks and their officers.*

The absence of an allegation in the bill of complaint that there was some act or omission on the part of Mrs. Leffler which kept the plaintiff in ignorance of an alleged fraudulent transfer, we deem not to be controlling because a statute of limitations runs from the discovery of the fraud and applies both to a party to the fraud and his privies. Certainly there was privity of estate between Leffler and his wife. It is stated in 2 Wood, *Limitations* (4th ed.), § 275 *Equitable rule in cases of concealed fraud:*

> "Courts of equity, independently of any statute, will relieve against fraud, if proceedings are seasonably brought after its discovery. Indeed, to use the language of Lord Cottenham, a court of equity will wrest property fraudulently acquired, not only from the perpetrator of the fraud, but 'from his children and his children's children,' or, as was said in another English case, 'from any persons to whom he may have parcelled out the fruits of his fraud.' "

See also 54 C.J.S., *Limitations of Actions,* § 185.

In deciding this case it is necessary that the three sections of the code cited above be construed together to effectuate the real and actual intention of the Legislature, and that Article 45, Section 1 should be read in the light of the general equitable principle that concealed fraud operates to toll the statute of limitations. Cf. *Chandlee v. Shockley,* 219 Md. 493, 150 A. 2d 438. See also *Scarborough v. Atlantic Coast Line R. Co.,* 178 F. 2d 253 (C. A. 4th Cir.) (cert. den. 339 U. S. 919). A creditor who has been diligent but kept in ignorance of his cause of action by the fraud of a party or his privies against whom relief is sought should not be barred by the

expiration of the three year period of limitations in Section 1 of that Article. Otherwise, as stated in *Wear v. Skinner*, 46 Md. 257, at page 267:

"\* \* \* it would not only be subversive of good morals, but contrary to the plainest principles of justice, to permit one practising a fraud and then concealing it, to plead the statute, when, in fact, the injured party did not know, and could not with reasonable diligence have discovered the fraud. And to require the plaintiff in all cases to prove a distinct and independent fraud in addition to the original fraud, whereby a party is injured, and that the subsequent concealment of the fraud is insufficient, would in a great measure defeat what we understand the Legislature meant. For if the narrow construction contended for be correct, and a party succeeds in getting the property \* \* \* through fraudulent representations, and concealed the fraud until limitations operates as a bar to the action, the injured party would. be without remedy, although he did not know of the fraud and could not by reasonable diligence, have discovered it. We cannot suppose the Legislature intended thus to restrict the operation of a *remedial statute*, nor do we think the terms of it require such a construction."

We hold, therefore, on the allegations of the bill that any interest in the Washington Street property which she acquired was subject to the rights of her husband's creditor, from whom his fraud had been concealed, and that the statute of limitations did not begin to run until the creditor's discovery of the fraud.

We think the chancellor was in error in sustaining the appellee's demurrer, rather than overruling it and requiring her to answer the bill of complaint, so that the case must be remanded for further proceedings.

*Order reversed, with costs, and case remanded for further proceedings not inconsistent with this opinion.*