BRACK *v.* EVANS ET AL., ETC., ET AL.

[No. 106, September Term, 1962.]

550

*Decided February 6, 1963.*

*Motion for rehearing filed March 7, 1963, denied April 9, 1963; motion for reallocation of costs filed March 7, 1963, granted April 9, 1963, and mandate modified.*

The cause was argued before Brune, C. J., and Henderson, Hammond, Horney and Sybert, JJ.

*Dorothy T. Jackson* for the appellant.

*Shale D. Stiller,* with whom were *Eli Frank, Jr.,* and *Frank, Bernstein, Gutberlet & Conaway* on the brief, for the appellees.

Sybert, J., delivered the opinion of the Court.

On December 28, 1961, appellant, William F. Brack, sued nine of the appellees, individually and as co-partners trading as Stein Bros. & Boyce, and Wilbur M. Kouk, an employee of that firm, in the Baltimore City Court in a two-count declara-

tion to recover for damages alleged to have resulted from appellees' negligence and fraudulent misrepresentations in a stock transaction. The appellees demurred to the declaration, stating as reasons that the cause of action alleged in each count was barred by limitations, and that no facts were alleged that showed any negligence or fraudulent misrepresentation on the part of any of the appellees. After a hearing the demurrer was sustained as to both counts, with leave granted to amend. An amended declaration was filed and appellees again demurred. After argument, the demurrer was sustained as to both counts, with leave to amend granted only as to the first count based on negligence. Appellant noted an appeal from the judgment for costs entered in favor of appellees on the second, or fraud, count. Appellant then filed a second amended declaration alleging negligence, to which another demurrer was filed for the same reasons as before. A third hearing was held and the court sustained the final demurrer without further leave to amend. Appellant filed an appeal from the additional judgment for costs entered in favor of appellees, and the two appeals have been consolidated.

Since a demurrer necessarily assumes as true any facts which are well pleaded, the facts are taken as found in the pleadings. On November 21, 1958, appellant read an announcement in the Wall Street Journal that the Upjohn Company intended to split its stock 25 for 1 and that a percentage of the new shares would be offered to the public on or about December 10, 1958, at $45.00 or less a share. On November 24, 1958, with this information before him, appellant telephoned the office of the appellee stock brokerage firm, Stein Bros. & Boyce, to place an order, and was referred to Wilbur Kouk, one of the appellees. Appellant asked Kouk to take his order for as many of the new shares of Upjohn at $45.00 or less per share as $15,000 would buy. Kouk informed appellant that the new stock would probably be over-subscribed and that it would be a waste of time to take his order. He recommended that appellant purchase ten shares of the old Upjohn common stock, then selling at $1,-525.00 a share before the split, for a total purchase price of $15,250.00. Alleging that Kouk and the other defendants held themselves out as consultants and experts in the field of securities, and that he relied entirely upon the recommendation

and counsel of Kouk, and that the latter knew of this reliance, appellant placed an order for ten shares of the old Upjohn stock. However, within a few minutes after he had placed the order, appellant recalled Kouk to cancel it, having calculated during the interval that he would be paying the equivalent of $61.00 a share and receiving only 250 new shares upon conversion, as compared with $45.00 a share for 339 shares if he purchased the stock as split, and that therefore there would be a difference of 89 shares and an overpayment of about $4,000.-00. Kouk informed him that he could not cancel the order as the ten shares of old stock had already been purchased for him, but assured appellant that he "* * * would get dividends, rights and privileges from the Upjohn Co. only by purchasing the 'old' stock, which he would not get if he bought the 'new' stock and that the effect of the dividends, rights and privileges that the Plaintiff would get along with the purchase of the 'old' stock would make up the difference of the 89 shares aforesaid, amounting to approximately Four Thousand Dollars ($4,000.-00) and that the Plaintiff would be just as well off by purchasing the 'old' stock * * *."

The declaration alleges that appellant relied upon the representations made by Kouk and permitted the order to stand, paying the brokerage firm $15,250.00 for ten shares of the old Upjohn stock on December 1, 1958. Appellant asked Kouk for a prospectus of the Upjohn Company, which was promised but never forwarded. It was alleged that the stock was split 25 for 1 and was offered to the public on December 10, 1958 and that at that time appellant could have purchased new stock at $45.00 per share. However, on January 3, 1959, a certificate for 250 shares of the new Upjohn stock was delivered to him by registered mail. Appellant never received any old stock, or any dividends, rights or privileges arising out of ownership of old stock. The allegation was made in the second amended declaration that "when said 'new' stock was delivered to the Plaintiff, in January, 1959, the Plaintiff became aware that Kouk had acted in a grossly negligent, reckless and careless manner in making the statements to the Plaintiff, which the Plaintiff relied upon entirely regarding the dividends, rights and privileges, which supposedly attached to the 'old' stock; that Kouk knew, or

should have known, that said misrepresentative statements were untrue at the time that they were made to the Plaintiff and were made in grossly negligent, reckless and careless disregard of the truth, his only purpose being to make a sale to the Plaintiff, as a result of which the Plaintiff paid approximately Four Thousand Dollars ($4,000.00) more for his stock than what he would have paid for said stock had it not been for the negligent and careless misrepresentations on the part of Kouk."

Appellant promptly attempted to get Kouk and the firm to take back the new stock and give him what he had purchased, *i. e.,* ten shares of the old stock with the additional dividends, rights and privileges mentioned, which they refused to do. This suit was filed on December 28, 1961, more than three years from November 24, 1958, when the stock was ordered, but less than three years from January 3, 1959, when the new stock was delivered to appellant.

The question before us on this appeal is the propriety of the lower court's action in sustaining appellees' demurrer to the second (or fraud) count in appellant's amended declaration and the demurrer to the second amended declaration (alleging negligence), both without further leave to amend. The demurrers claimed that no facts showing fraudulent misrepresentation or negligence on the part of any of the defendants were alleged in the respective counts of the declarations.

As to the fraud count in the amended declaration, we find that the demurrer was properly sustained. In this count, appellant used the words "fraudulently misrepresented" several times, but pleaded no facts from which the existence of fraud could be inferred. As was recognized in *Ragan v. Susquehanna Power Co.,* 157 Md. 521, 526-527, 146 Atl. 758 (1929), "* * * such words as * * * [fraudulent] are characterizations of the needed facts rather than allegations of them. Charges of fraud are never regarded in law as sufficient unless accompanied with allegations of the facts and circumstances which constitute the fraud. * * *". See also *Brack v. Barton,* 185 Md. 366, 45 A. 2d 100 (1946). A thorough examination of the count leads us to the conclusion that appellant failed affirmatively to allege any facts to show that Kouk overstepped the line which divides negligence from fraud in the original stock transaction.

However, we think the situation is different as to the negligence count embodied in the second amended declaration. Without repeating in detail the allegations made in that declaration, which have previously been recited in this opinion, we feel they sufficiently make out a cause of action to warrant trial of the issue of negligence. *Holt v. Kolker,* 189 Md. 636, 57 A. 2d 287 (1948); *Virginia Dare Stores v. Schuman,* 175 Md. 287, 1 A. 2d 897 (1938); 65 C.J.S. *Negligence,* Sec. 20, pp. 427-428.

We turn now to the question whether or not the appellant's suit is barred by the statute of limitations. One of the grounds alleged as a reason for the demurrers was that the litigation was commenced more than three years after the accrual of appellant's cause of action. We express no opinion as to whether the issue of limitations could properly be raised by demurrer in a suit at law. See Maryland Rule 342 c 2 (a). The point was not raised or argued below or on this appeal and therefore it must be treated as waived.

Code (1957), Art. 57, Sec. 1, requires an action for negligence to be brought within three years after it accrues. The majority of courts have adopted the view that limitations begin to run from the date of the alleged wrong, and not from the date the alleged wrong is discovered by the plaintiff. See *Abell v. Harris,* 11 G. & J. 367, 372 (1841); *Biays v. Roberts,* 68 Md. 510, 515, 13 Atl. 366 (1888); *Winand v. Case,* 154 F. Supp. 529, 537 (D. Md. 1957); *West v. Board of Ed. of Prince George's County,* 165 F. Supp. 382 (D.D.C. 1958). See also 2 Wood, *Limitations of Actions,* Sec. 276 c(1), (4th ed. 1916); 34 Am. Jur., *Limitations of Actions,* Sec. 230; 54 C.J.S., *Limitations of Actions,* Sec. 205. However, appellant argues that the case before us is removed from the ambit of the above rule by virtue of Chap. 357 of the Laws of 1868, now codified as Code (1957), Art. 57, Sec. 14, which reads:

> "In all actions where a party has a cause of action of which he has been kept in ignorance by the fraud of the adverse party, the right to bring suit shall be deemed to have first accrued at the time at which such fraud shall or with usual or ordinary diligence might have been known or discovered."

Appellant asserts that his second amended declaration shows that he was kept in ignorance of his rights by the fraudulent actions of the appellees, until January 3, 1959, when he received the new Upjohn stock. He contends that the statute of limitations should be tolled until that date, and that consequently his suit was filed in time.

We think the position of appellant is sound. The cause of action set up in the second amended declaration is negligence in recommending that appellant purchase old Upjohn stock which would suffer a substantial reduction in value within a few weeks, at the time of the stock split. The heart of appellant's allegations with regard to concealment is, in substance, that Kouk's recklessly false representations that dividends, rights and privileges incident to the old stock would offset the difference in price of the new stock, operated to conceal their falsity and amounted in themselves to fraud by which he was kept in ignorance of the existence of his cause of action. Under the circumstances of this case appellant was entitled to rely upon Kouk's representations, and there would appear to be no reason for him to exercise any more diligence in protection of his rights than he did. The fraudulent concealment of the negligence was discovered only when the new stock was received on January 3, 1959, and only then did appellant realize the falsity of the representations that he would receive old stock with equalizing dividends, rights and privileges. As was said in *Schuck v. Bramble,* 122 Md. 411, 89 Atl. 719 (1914), with reference to the fraud which, under Code (1957), Art. 57, Sec. 14, will avoid the defense of limitations (at pp. 414-415 of 122 Md.):

> "* * * That fraud may be either an actual concealment of facts, or the fraud may be of such a character as to conceal itself, whereby the plaintiff remains in ignorance without any lack of diligence on his part, and it is not necessary to constitute such fraud, that there shall be any special effort on the part of the defendant in the way of concealment. * * *"

See also *Wear v. Skinner,* 46 Md. 257 (1877); *Cumberland Glass Mnf'g Co. v. DeWitt,* 120 Md. 381, 87 Atl. 927 (1913);

*Citizens Bank v. Leffler,* 228 Md. 262, 268, 179 A. 2d 686 (1962).

The case of *Piper v. Jenkins,* 207 Md. 308, 113 A. 2d 919 (1955), relied upon by appellees, is distinguishable. There, a demurrer to a replication intended to take advantage of Sec. 14, *supra,* was sustained because there was no averment as to how and when plaintiffs made discovery of the fraud. Here, such averments appear in the second amended declaration.

Taking the allegations in the second amended declaration as true, as we must on demurrer, we find that there was sufficient averment of fraudulent concealment by appellees of appellant's cause of action for negligence, and hence we cannot say as a matter of law that the statute of limitations was not tolled until January 3, 1959, when the new stock was received. We therefore hold that the demurrer to the second amended declaration should have been overruled.

> *Judgment of March 30, 1962, affirmed; judgment of June 1, 1962, reversed, and case remanded for further proceedings consistent with the aforegoing opinion; costs to be equally divided between the parties, each side to pay one-half.*