Planters' Bank of Prince George's County *vs.* Bank of Alexandria.—1839.

THE PLANTERS' BANK OF PRINCE GEORGE'S COUNTY *vs.* THE BANK OF ALEXANDRIA.—*June* 1839.

There can be no error in submitting an issue to the jury in the terms in which it is joined.

It is no objection to the granting of a prayer, on the part of the adverse party, that it places his cause upon more favorable grounds before the jury than the nature of the case entitles him to.

The plaintiff, to avail himself of an act of assembly suspending his remedy, to avoid the effect of the plea of limitations, must rely upon it in his pleadings, and cannot take advantage of it, when the issue is joined upon the plea.

If the defendant (a corporation) ceases to be suable by the provisions of an act of assembly, the act of limitations would be no bar to the claims of creditors.

The forfeiture of a charter of incorporation cannot be taken advantage of collaterally, or incidentally, or in any other mode than by a direct proceeding for that purpose; and the government, which may waive the forfeiture, can alone institute such a proceeding.

Where a party submits a variety of distinct prayers which are refused by the court, and excepts to such refusal collectively, this court will regard the

refusal in the same light as if each question raised had been separately determined, and formed the subject of an independent exception.

It would be error to take from the jury a fact, to establish which, evidence legally sufficient had been offered to them.

Appeal from *Prince George's* County Court.

This was an action of *assumpsit*, brought by the appellee against the appellant on the 20th February 1836. The defendants pleaded *non assumpsit* and limitations in both forms; on which pleas issues were joined.

At the trial of this cause the plaintiffs, to support the issues joined on their part, proved to the jury that, on the 4th March 1823, and on the 6th and 8th March 1828, the plaintiffs sent to the defendants for collection, the draft of *William Fowle & Co.* on *Richard Estep* for $298.13, and of the same parties on *Phil. Chew* for $190.05, and the note of *Boteler & Brookes* for $200, the latest of which was due and payable in the year 1828, and was then paid to the defendants. They further read to the jury the following letters, which it was admitted were written by the officers of the defendants to the officers of the plaintiffs, and were received by the latter.

*Planters' Bank, March* 14, 1831.

*Dear Sir,*—Your letter with its contents were handed me by Mr. Robbins, and it is with regret that I have to inform you that I am unable to comply with your demands. The law of our State extending the charter of this institution, does not allow us to give a preference to any creditor of the bank, or any class of creditors, but requires us whenever our funds are equal to 10 per cent. upon its debts, to make a distribution among its creditors generally. We are endeavoring to make collections on judgments, and I hope soon to be able to make you a payment. I would remark, that your claim against us on book account, is considerably larger than the amount to your credit on our books. It is my earnest desire to adjust the balance due you, and for that purpose visited the District nearly two years since; some of the accounts were settled. Yours with two other accounts still remain unascertained. The accounts which have been furnished to me do not enable me to

detect the discrepancies which exist. Any way you may suggest for an early settlement of our account will be acceded to by me; whatever balance may be due by your institution, will of course bear interest from the demand.

Yours very respectfully,

R. H. BROOKES, *Cashier Planters' Bank of Prince George's County.*

*Upper Marlborough, March* 20, 1829.

*Dear Sir,*—Lest I should be considered culpable in respect to a late transaction between you and this bank, I beg you to be assured that I have been kept in the dark until a few days ago, or your debt would have been paid before this. Conduct in the officer of a bank so reprehensible, and so calculated to destroy the credit of the bank, I could not forbear to communicate to the board, and I am directed to have your claim paid immediately, and which you may calculate will be done in a few days by express, if no suitable opportunity should occur. Mr. Tyler has been seriously indisposed all the week, and is still unable to do business.

I am, respectfully, sir, your ob't serv't,

J. R. MAGRUDER, *Pres't Planters' Bank.*

*Planters' Bank of Prince George's County,*
*30th November,* 1832.

Mr. Jas. L. McKenna,

*Dear Sir,*—Your favor of this date by Mr. Larmour is this moment handed to me. I will submit the letter and its enclosure to the president and directors of this bank at their next meeting. Respectfully, dear sir, your ob't serv't,

J. BROOKES, *Cashier.*

*Planters' Bank of Prince George's County,*
*5th July,* 1833.

Mr. Jas. L. McKenna,

*Dear Sir,*—Your esteemed favor of the 2nd inst. is this day received, referring me to your letter of 30th November last, requesting a remittance of a balance, and acknowledging receipt of my reply, in which I promised to submit your letter to the board of directors of this institution at their next meeting,

and complaining that this has not been done, and of my silence. I now have to state, sir, that the subject of your letter has been repeatedly mentioned to the board, and I am instructed to say, that the statement exhibited by you does not accord with our books, and that we have no evidence of any admission on our part. I am directed to pay such balance as our books shew to be due, which I find to be two hundred and ninety eight dollars, fifty-six cents.

Respectfully, dear sir, your obed't serv't,

J. BROOKES, *Cashier.*

*Planters' Bank of Prince George's County,*
*22nd November,* 1833.

Mr. JAS. L. McKENNA,

*Dear Sir,*—The papers handed me by you in Alexandria, referring to the unsettled account between the Bank of Alexandria and this Bank, were submitted to the board of directors this day, and the annexed resolution is their determination. I will be in Alexandria in the course of the next week, and will return the papers handed me.

Most respectfully, dear sir, your ob't serv't,

J. BROOKES, *Cashier.*

*Planters' Bank of Prince George's County,*
*22nd November,* 1833.

*Resolved by the Board of Directors of this Institution,* That the cashier of this Bank be and he is hereby authorised to pay to the Bank of Alexandria two hundred and ninety-eight dollars and fifty-six cents, the amount appearing to be due to that institution by the books of this bank, and that the cashier be instructed to inform said bank no larger sum will be paid by this institution.

True extract from the minutes of proceedings.

J. BROOKES, *Cashier.*

They further proved by *Mr. Hoffman,* the cashier of the plaintiffs, that some time early in December, in the year 1834, he called on the cashier of the defendants for the purpose of having a settlement of the account between the plaintiffs and defendants, but on that occasion the cashier of the defendants

did not propose to open the accounts for the purpose of examination, though he stated that if the plaintiffs would write a letter on the subject to him as an individual, he would have no objection to lay it before the president and directors of the defendants; and the plaintiffs further proved that, from the year 1823 to 1828, there were mutual dealings between the parties, as banking institutions, reciprocally sending and receiving for each other drafts and notes for collection.    And thereupon the defendants to maintain the issues joined on their part, proved to the jury by *John Brookes*, their present cashier, that he was appointed their cashier in February 1832, that at that time he was informed by the president and directors of the defendants that the three items of claim mentioned in the plaintiff's proof were disputed and denied, and that in all his conversations from that time with the plaintiffs, he, as instructed by the defendants, informed them of such dispute and denial.    That he cannot distinctly remember the earliest of his conversations with the plaintiffs, but he thinks some of them were shortly after his appointment as cashier as aforesaid.    And the said defendants further proved, that some time in August, in the year 1829, the defendants as a banking institution suspended cash payments and discontinued banking operations, and that the fact of such suspension and discontinuance was known to the plaintiffs in said year 1829.

The defendants thereupon prayed the court to instruct the jury as follows:

1st. That if the jury find from the evidence, that the causes of action contained in the plaintiff's declaration accrued three years or more before the issuing of the original writ in this cause, that then the plaintiffs are not entitled to recover upon the pleadings, unless the jury shall find from the evidence that there has been within the said three years or since, an acknowledgment of indebtedness on the part of the defendants of the claims now sought to be recovered against them by the plaintiffs, or some portion of it.

2nd. That the proofs offered by the plaintiffs in this case, consisting of the letters and parol evidence before mentioned,

is not sufficient (although believed by the jury) to remove the bar of the statute of limitations, and consequently, the verdict of the jury, on the issue raised by the plea of the statute, must be for the defendants.

3rd. That if the jury believe from the evidence, that the defendants suspended cash payments in August, 1829, and discontinued banking operations in that year, and that the fact of such suspension and discontinuance was known to the plaintiffs three years or more before the institution of the present suit, then the plea of limitations is a bar to the action, and the verdict of the jury upon the issue on that plea must be for the defendants, unless the jury shall find that within the three years, or since, the defendants have made some acknowledgment of indebtedness to the plaintiffs of the claim now sought to be recovered, or some part of it.

4th. That under the circumstances of this cause, and upon the proof before mentioned, the denial of the defendants of any indebtedness to the plaintiffs was not essential to the right of action of the plaintiffs, and that consequently, the running of the statute of limitations is not suspended until such denial. But the court (STEPHEN, C. J., KEY and DORSEY, A. J.) refused to give the three first of the defendants' prayers, and granted the last. To which refusal of the court to give the three first prayers, the defendants by their counsel excepted, and prayed the court to sign and seal this bill of exceptions, which is accordingly done this 12th day of April, 1838.

There was a verdict and judgment for the plaintiffs below, and the defendants thereupon brought the appeal.

The cause was argued before BUCHANAN, C. J., ARCHER, DORSEY, and CHAMBERS, J.

J. JOHNSON and T. G. PRATT for the appellants contended:

1. That the court erred in not granting the defendant's first prayer.

2. That the evidence in the exception, taken altogether, was not sufficient to remove the bar of the statute, and that

consequently the defendant's second prayer should have been granted.

3. That the defendant's third prayer was clearly warranted by the decisions of this court, in the cases of *The Planters' Bank of Prince George's County vs. The Union Bank of George-town* and the *Farmers and Mechanics' Bank of Georgetown.*

By Tuck and A. C. Magruder for the appellees, who contended:

1. That from the letters and other proof stated in the exception, the jury might infer that the plaintiff in error asked for, and the defendant in error agreed to give, time until the former was prepared to make a payment according to the law. If so, the statute did not commence running till the receipt by the defendant in error of the letter of 5th July 1833.

2. If the *Planters' Bank*, after obtaining the law of 1829, forbidding payment by the institution of any of the claims against it, except in conformity to its provisions, did not inform the defendant in error that it was ready to pay the debt, then a subsequent promise to pay, or acknowledgment of indebtedness, was not necessary to take the case out of the statute of limitations.

3. The exception is taken, not because the court refused to grant any one of the first three prayers, but because it refused to give all of the first three instructions prayed for.

4. The proof in the bill of exceptions shews that, the plaintiff in error, within three years before the suit was brought, acknowledged that the accounts between the parties of their mutual dealings remained unsettled, and open, and that a certain sum was due, which they promised to pay—and upon this acknowledgment and promise the defendant in error was entitled to recover.

5. The 1st and 3rd prayers would make it the province of the jury to decide when the right of action accrued, and what acknowledgment or promise would take the case out of the statute.

Dorsey, Judge, delivered the opinion of the court.

The court's rejection of the defendant's *first* prayer in the bill of exceptions, is attempted to be sustained on the ground that the time, when the plaintiff's cause of action accrued, is a matter of law dependent on facts, and ought to be decided by the court, and not left to the determination of the jury. We do not think that the refusal of the prayer can be sustained on this ground. The prayer is not to be understood, as asking the court to leave to the jury, the decision of any question of law arising upon the facts proved, but simply, the finding of those facts, which in the absence of any application to the court as to the law arising thereon, and conceded by the parties to be sufficient to constitute such accruing of the cause of action. The court were called upon in this respect to do nothing more, than leave to the finding of the jury, that which under the issue joined, it was their duty to find, if no prayer had been offered upon the subject. It surely could not have been error in the court, in submitting, as they did, the issue in fact to the jury in the very time in which it had been joined.

It is further insisted, that the *first* prayer ought to have been rejected, because it required of the court to leave to the jury the finding of whether there had been within three years since the accrual of the right of action an acknowledgment of indebtedness on the part of the defendants of the claims now sought to be recovered against them, or some portion of it, on the ground, that what is an acknowledgment of such claims sufficient to take the case out of the statute of limitations, is a question of law, and not of fact. The rejection of the prayer cannot be supported on this suggestion. The prayer in this qualification of it, did not require the court to instruct the jury to find, whether there had been within three years, such an acknowledgment of indebtedness, as would take the case without the statute; but simply to find the isolated matter of fact, whether there had been within that period, any acknowledgment of indebtedness on account of the claims of the plaintiff. With such an instruction the plaintiffs had no cause to

354      CASES IN THE COURT OF APPEALS

Planters' Bank of Prince George's County *vs.* Bank of Alexandria.—1839.

be dissatisfied. It placed their rights in a more favourable aspect before the jury, than they were entitled to. It left the jury at liberty to find a verdict for the plaintiffs, not only if they found such facts as in contemplation of law, would have entitled the plaintiffs to it; but it in fact was an instruction to the jury, that they might find for the plaintiffs, if they found within the specified period any acknowledgment by the defendant of indebtedness for the plaintiffs' claims, no matter whether in the eye of the law, such acknowledgment would have removed the statutory bar or not. To the granting at the instance of the defendants the prayer now under consideration, we think neither the court nor the plaintiffs had any right to object upon either of the aforementioned grounds.

The plaintiffs also insist, that this prayer ought not to have been granted by the court, because the act of 1829, ch. 61, by its provisions, suspended their right of action until the happening of contingencies which are not shewn to have accrued three years before the commencement of the present suit: and conceding that this act of assembly, worked no such suspension, yet that connecting it with the evidence contained in the bill of exceptions, there was testimony legally sufficient to have been left to the jury, to have warranted them in finding, that an agreement was entered into by the plaintiffs and defendant, that the former would suspend the collection of their claim, until the latter made default in its payment, according to the provisions of the act of 1829.

To this matter in avoidance of the defendant's plea of limitations, it has been insisted, first, that the act of 1829, is a private law; and as such, not being made a part of the proof in the cause, this court cannot look out of the record to take cognizance thereof. The act of 1817, ch. 61, chartering *The Planters' Bank of Prince George's County*, is admitted to be a public law; but on the part of the plaintiffs it is urged that, the act of 1829, in repealing those sections of the act of 1817, which gave to it the efficacy of a public law, thereby itself became a private law. The effect of this strange doctrine is, that the court is bound judicially to know the enactments of

the act of 1817, but it is not permitted to take judicial cognizance of the act of 1829, which repeals all those parts of the act of 1817, which gave to it its public character. For repudiating such a principle, it is not necessary to use argument, or cite authority. Was there evidence legally sufficient to be left to the jury, to authorise their finding that, an agreement was entered into between the plaintiffs and defendant, (as contended for by the former) for the suspension of the payment of the claim preferred against the *Prince George's County Bank* is the next question to be examined. We are clearly of opinion that, there was not a word of direct proof of such a fact; the record exhibits not a particle, and such an inference, so far from being sustained, is repelled by all the testimony in the cause; as well the written as the oral evidence demonstrates that, the claim of the plaintiffs was always disputed by the defendant, and that the parties never came to any agreement on the subject of its liquidation. Did the act of 1829 suspend the right of the plaintiffs to an immediate prosecution for the recovery of their claim, is the next subject for inquiry. If the pleadings in the cause were such as to present that question, and if the charter of the *Prince George's County Bank*, was under its 34th section by the suspension of specie payments *ipso facto* null and void; without the institution of any judicial enquiry upon the subject, then we think, the plaintiffs were controlled in the prosecution of their claim, by the terms and conditions prescribed in the act of assembly, and that upon the proofs now in the cause, the statute of limitations would not be a bar to their claim. If the charter of the *Planters' Bank* were to be regarded as a nullity in 1829, the bank ceased to be suable, and courts of law furnished no remedy by which its property could be reached by a creditor, in seeking the payment of his debts. The legislature in restoring to the creditors their lost rights, had the power of making the restoration dependent on such conditions as it might see fit to prescribe.

But the plaintiffs have not by their pleadings placed themselves in an attitude to be saved from the operation of the act

of limitations. They have not relied upon those facts and circumstances which constitute the saving, and no opportunity being afforded the defendant of taking issue thereon, he is not to be surprised at the trial by proof of their existence. Another impediment arrests the progress of the plaintiffs in their efforts to evade the act of limitations. The forfeiture of the charter of the *Planters' Bank*, cannot be taken advantage of, or enforced collaterally, or incidentally, or in any other mode than by a direct proceeding for that purpose; so that it may have an opportunity to answer, and the government creating the corporation can alone institute such a proceeding, since it may waive a broken condition of a compact made with it, as well as an individual. See *Angel and Ames on Corp.* 510. That such a forfeiture must be judicially established, see the *Canal Co. vs.* the *Rail Road Co.* 4 *Gill. & John.* 1. The necessity for the judicial establishment of such forfeiture, is not avoided in this case, by shewing that, the stockholders of the *Planters' Bank* accepted the terms and conditions offered them by the act of 1829. Of such acceptance, no testimony legally sufficient to prove it was offered to the jury, and in the absence of such proof, this act of assembly must be regarded by the court as inoperative.

The court's refusal to grant the defendant's first prayer, is attempted to be sustained on another ground. It is alleged that, the bill of exceptions shows that the defendant's appeal is taken from the court's refusal to grant his three first prayers, and that if any one of those prayers was properly rejected by the court, their judgment must be affirmed. In support of this proposition the case of the *Maryland and Phenix Insurance Companies vs. Bathurst,* 5 *Gill & John.* 159, has been referred to, where the Court of Appeals sanctioned the judgment of the county court, in rejecting a prayer for its instruction to the jury, that the plaintiff was not entitled to recover, if the jury believed any one of a number of facts. The decision of the county court in that case bears no analogy to that made in the case now before us. There was in that case, but one prayer made to the court, to which it

made the apt and appropriate response. It decided correctly all that it was called upon to determine. In the case before us, three separate and distinct questions were submitted to the decision of the court, on each of which, it was the design of the party raising them, that the court should pass its opinion, the decision of any one of them by no means superseding the necessity of deciding the others. The county court so understood the application made to it, and decided accordingly, rejecting three of the prayers, and granting the fourth. The jury could have understood the court no otherwise, than as refusing to grant either of the three first prayers, and under that understanding their verdict was rendered. We must therefore regard the refusal appealed from, in the same light, as if each question raised had been separately determined, and formed the subject of an independent bill of exceptions.

It follows from the views we have expressed in this case, that the county court in our opinion erred in refusing the first instruction prayed for by the defendant. And for the same reasons we think they committed a similar error in their refusal of the defendant's third instructions.

The second instruction we think was properly refused by the court. It wrested from the consideration of the jury, a fact which they were necessarily required to decide, and for the finding of which fact, we think there was testimony legally sufficient to have been left to the jury. The court was required to instruct the jury, that the proof offered by the plaintiffs, consisting of the letters and parol evidence detailed in the bill of exceptions, (although believed by the jury) was not sufficient to remove the bar of the statute of limitations. Before such a requisition could have been complied with by the court, it must decide the matter of fact, that the balance of two hundred and ninety-eight dollars and fifty-six cents, admitted by the defendant, by the letter of its cashier of the 5th of July 1833, to be then due to the plaintiffs, formed no part of the claim for which the present action was brought. Under the proofs and circumstances of this cause, such a decision the court were incompetent to make. There were circumstan-

ces in the evidence before them, from which either of two op-posite conclusions as to the fact might have been legitimately drawn by the jury. It was therefore a subject within their exclusive cognizance, and the effort to withdraw it from their consideration was rightfully rejected by the court.

We concur with the court below in this refusal of the appellant's second prayer, but dissent from their refusal of the first and third, and therefore reverse their judgment.

JUDGMENT REVERSED AND PROCEDENDO AWARDED.