FEINBERG ET AL. *v.* GEORGE WASHINGTON CEMETERY, INC. AND WASHINGTON MEMORIAL PARK, INC.

[No. 3, September Term, 1961.]

*Decided October 11, 1961.*

*Motion for rehearing and suggestion for removal of new trial ordered by this Court from lower court from which this appeal was taken filed November 10, 1961, rehearing denied and suggestion for removal granted November 17, 1961.*

The case was argued before Brune, C. J., and Henderson, Hammond, Prescott and Sybert, JJ.

*Seymour O'Brien* and *Benjamin C. Howard,* with whom were *Robert L. Karwacki, Miles & Stockbridge, Thomas B. Yewell* and *Welsh, Dyer & Lancaster,* for appellants.

*Jerrold V. Powers,* with whom were *Sasscer, Clagett & Powers,* for appellees.

Henderson, J., delivered the opinion of the Court.

Five appellants severally appeal from judgments entered upon jury verdicts against them for compensatory damages in the sum of $117,126.00, and punitive damages in varying amounts. A remittitur was ordered and filed, reducing the amounts of punitive damages. The declaration, in effect, alleged an unlawful conspiracy by the operators of competing cemetery companies, and their attorneys and agents, to wreck the business of the appellees; that pursuant thereto, and by means of a purported forfeiture of the pledged capital stock of the appellees owned by one Houser, the appellants ousted the rightful officials of the appellees and exercised full management and control of the business of the appellees during the period from January 9, 1959 to May 23, 1959; that during said period and thereafter the appellants maliciously damaged the business of the appellees and their contractual and business relations with others.

Many of the facts and circumstances as to the purported forfeiture were set out in the prior opinion of this Court in

*Litteral v. Houser,* 221 Md. 403. We there held that Houser, the purchaser of stock owned by the Millers, had a right to redeem his own and the purchased stock, which had been pledged to secure the purchase price, in case of default, and that he had made timely efforts to do so. We affirmed a decree in favor of Houser, as to the ownership of the stock. We noted that Litteral, the assignee of all the rights of the Millers in the stock purchased by Houser, had joined the appellee corporations as parties plaintiff in his bill of complaint for an injunction and accounting, and had assigned error in their dismissal. We declined to consider the point, however, because Houser had agreed that the corporations, if found to be necessary parties, could be joined as defendants on remand. But before any action was taken with regard to an accounting on remand, this action at law was instituted by the corporations.

The first questions raised on this appeal are whether the demurrers of Litteral and Browner to the declaration were properly overruled, and whether their motions to dismiss because of the pending equity proceeding were properly denied. We will consider these questions together. The argument as to the demurrers seems to be that whatever rights of action may have accrued to Houser, the sole stockholder, by reason of the wrongful attempt to acquire his stock, such acquisition did not give rise to an action by the corporations. These appellants rely upon *Llewellyn v. Queen City Dairy,* 187 Md. 49, but we think the case is distinguishable. There the declaration was based upon the theory that certain options to purchase stock, obtained by directors through misrepresentation, gave rise to a cause of action by the corporation, on behalf of minority stockholders. It was held that the corporation was not a proper party to an action predicated upon misrepresentation or fraud upon stockholders, and not upon damage to the corporation. In the instant case we think the allegations of damage to the corporations, by mismanagement after the acquisition of control, are sufficient to state a cause of action. It is true, of course, that the mere allegation of a conspiracy is not enough, although the fact of conspiracy may be a matter of aggravation. *Kimball v. Harman,* 34 Md. 407,

411. But here there is a clear statement of mismanagement and damage to the corporations by the persons in control. This is the gist of the action, and the mere fact that the damage is not particularized cannot, we think, open the declaration to demurrer. Cf. *Sumwalt Co. v. Knickerbocker*, 114 Md. 403, 413.

We find no merit in the claim that the action was precluded by the pendency of the equity case on remand. It is true that the decree affirmed on appeal had, by stipulation, provided for an accounting for all monies claimed to be due by one side to the other. Such accounting would necessarily be limited to the claims of the respective parties arising out of the only disputed issue as to the ownership of the shares of stock. The question posed, but not decided, as to whether the corporations were necessary parties, was confined to that limited issue. It did not encompass the present issue as to mismanagement and injury to the corporations in their own right. Even if we assume, without deciding, that such an issue could have been litigated in the equity case, we are referred to no authority which would preclude the appellees from resorting to an action at law, in which punitive and not merely compensatory damages could be claimed. Even if the appellees were obliged to make an election of remedies, they elected in favor of an action at law, and the record does not show that the appellants raised any objection at that time.

The appellants preserved no objection to the court's elaborate and careful charge to the jury, or to the introduction of evidence as to compensatory damages, except in connection with the asserted loss of a contract with the Washington Suburban Sanitary Commission, and evidence offered by the witness, Tripp, in connection therewith. There was, however, an objection to the instruction as to punitive damages, on the ground of the insufficiency of the evidence of malice, and objections to the exclusion of evidence in mitigation of such damages.

Tripp was produced by the appellees and testified that he was a designing engineer employed by the Sanitary Commission. He testified that there had been a proposal to extend a sewer line through the appellees' property and a report pre-

pared by his department. The Commission had tried unsuccessfully to negotiate the purchase of a right of way prior to January 5, 1959. He had prepared a report estimating the cost of carrying the line through the property, and also the cost of carrying it around the property. Without objection, he stated the figures contained in this report. Installation by way of the alternative route would cost some $29,000 more than by way of the direct route, since it would require the installation and maintenance of a pumping station. He testified that the Commission never made an offer to the appellees, and never "formulated a figure for the purchase of a right of way. The Commission had no power of condemnation over cemetery property." Over objection, he was then permitted to state: "In my opinion, based on my experience with the Commission, I feel that the Commission would have been perfectly willing to pay to the cemetery people the amount of money that it cost to use the alternative method, which amount was $28,725.25." The trial court overruled a motion to strike the answer.

Since it was admitted that there was no contract, and no offer by the Commission, there is no basis, beyond speculation, to support a claim for loss of profits on such a transaction. The appellees argue that the answer of the witness was not prejudicial, because he merely "synthesized facts already in evidence", and the jury might have drawn the inference that the Commission would have been willing to pay, for a route through the cemetery property, a sum at least equal to the differential in cost of installing the sewer extension along an alternate route. We find no basis for such an inference.

The record shows that negotiations for the purchase of the right of way had broken down, prior to the acquisition of control by the appellants, because the Commission and the prior officials of the corporations could not agree as to the fair market price of the strip of land involved. The Commission seems to have taken the position that, because of the terrain, the strip was virtually without value for cemetery purposes, and the installation of the sewer would enhance the value of the cemetery property as a whole. The corporate officials felt that the strip had value for cemetery purposes and that it was

in the best interests of the enterprise to retain it. The same difference of opinion appears in subsequent correspondence between counsel for the Commission and Litteral. It does not appear that the greater cost of installation over an alternate route was ever disclosed to Litteral, or played any part in the negotiations. There was no evidence as to what the fair market value of the strip was, or even of its cost to the corporations. Hence there was nothing upon which to predicate a loss of profits from failure to consummate a sale to the Commission. It is well settled that loss of profits must be shown with reasonable certainty. Cf. *Evergreen Amusement Corp. v. Milstead*, 206 Md. 610, 618-621 and cases cited. *John B. Robeson v. Gardens*, 226 Md. 215, 225. See also 4 Restatement, *Torts*, § 912 (d). We hold that the evidence was legally insufficient to support recovery as to this item, and that the judgment for compensatory damages should be reduced in the amount of $28,725.25.

On the question of punitive damages the appellants, in their brief, do not press the contention that there was no legally sufficient evidence of malice to warrant submission of that issue to the jury. They contend that a new trial should be awarded because of the exclusion of evidence tending to show steps taken during the period of their control that were beneficial to the corporations, as tending to rebut the inference of malice and bad faith. Without setting out the proffered testimony in detail, it is sufficient to state that it covered steps taken to pay or defer the claims of creditors, to cooperate with persons making interments, and to secure fresh capital. Such conduct would tend to negative an intent to wreck the business after wrongfully obtaining control, which is the gravamen of the appellees' cause of action.

It is generally recognized that in a claim for punitive damages the jury is entitled to consider all the circumstances bearing upon malice or bad faith. See 1 Sedgwick, *Damages* (9th ed.), § 383; 25 C.J.S., *Damages*, § 127. It has been held that the defendant has a right to offer evidence in mitigation. *Rogers v. Bigelow*, 96 Atl. 417 (Vt.) ; *Roberts v. Condé Nast Publications*, 146 N. Y. S. 2d 493 (App. Div.). The principle was recognized in *B. & O. R. R. Co. v. Barger*, 80 Md.

23, 35. We think the trial court erred in excluding the proffered evidence, and that the error was prejudicial. We shall accordingly remand the case for a new trial upon the issue of punitive damages. No point has been made with regard to the allocation of damages, compensatory or punitive, as between the two plaintiff corporations, and we express no opinion on this matter.

> *Judgment for compensatory damages reduced by $28,725.25 and judgment entered for $88,400.75; judgments for punitive damages reversed and new trial awarded upon that issue; costs to be paid equally by the appellants and the appellees.*