KILLEN *v.* GEORGE WASHINGTON CEMETERY, INC. ET AL.

[No. 172, September Term, 1962.]

*Decided April 23, 1963.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, HORNEY and SYBERT, JJ.

*Ewing C. Whitaker,* with whom was *E. Richard McIntyre,* on the brief, for appellant.

*Jerrold V. Powers,* with whom were *Sasscer, Clagett & Powers* on the brief, for appellees.

SYBERT, J., delivered the opinion of the Court.

This is an appeal by a defendant from the refusal of the Circuit Court for Prince George's County, in a jury trial, to grant his motions, made at the conclusion of the plaintiffs' case and again at the conclusion of all the evidence, for a directed verdict in his favor as to all counts of the plaintiffs' declaration on the ground that the claims thereby asserted against him were barred by the statute of limitations. The appellant also challenges the court's instructions to the jury as to when limitations began to run.

This case arose out of a sale of the stock of George Washington Cemetery, Inc.[1] On February 26, 1957 the appellant, Harold J. Killen (defendant below), then the sole stockholder of the corporation, sold all of his stock to Albert F. Houser (he and the corporation were plaintiffs below and are appellees here) and Harold I. Miller. In a written agreement of the same date Killen agreed to pay, within 90 days from the date of the sale, any obligations or notes of the corporation not set forth in an audit of the corporation dated December 31, 1956, which at a later date might be disclosed to have existed as of the

---

1. For previous episodes in the turbulent history of George Washington Cemetery, Inc., see Litteral v. Houser, 221 Md. 403, 158 A. 2d 75 (1960); Feinberg v. Geo. Wash. Cemetery, 226 Md. 393, 174 A. 2d 72 (1961); and Killen v. Amer. Cas. Co., 231 Md. 105, 189 A. 2d 103 (1963).

date of the audit. Subsequently, Miller transferred his stock to Houser.

On November 9, 1960 Houser and the corporation sued out a nonresident attachment on original process against Killen, who in October, 1957, had moved to Arizona. The first two counts of the declaration alleged that early in 1958 the plaintiffs had learned of the existence of two outstanding promissory notes of the corporation, held by the trustees of the care fund for the cemetery, one dated July 8, 1953, for $1,980.00, and the other dated November 1, 1955, for $2,070.00, both of which were alleged to have been obligations of the corporation existing on the date of the audit, but not shown thereon, and still unpaid. The eighth count charged that at the time of the sale of his stock Killen had represented the assets and financial condition of the corporation to be as reflected by its books and records and that among the books and records there was reflected as an asset of the corporation a parcel of land adjoining the cemetery and known as the "well lot", but that Killen, who held title to the lot individually, had never conveyed it to the corporation as promised, despite the fact that a $4,000.00 encumbrance thereon which Killen claimed had prevented it from being transferred, had been paid off by the corporation. In the ninth and final count, the plaintiffs alleged that they learned in September, 1960, that one Alice Henson had paid to Killen, as an officer of the corporation and for its use, the sum of $20,000.00, in return for which the corporation agreed to and did construct a memorial fountain and garden, but that the money given to Killen was never turned over to the corporation. Each of the counts claimed money damages. Counts three, five, six and seven were withdrawn before trial, and count four is not material here as verdict and judgment thereon were for the defendant and the plaintiffs did not appeal.

The attachment was laid in the hands of the plaintiff, George Washington Cemetery, Inc., which filed a plea as garnishee admitting certain assets due by it to the defendant, Killen. Killen appeared, and to the whole declaration he filed, in addition to the general issue pleas, a special plea of limitations, to which the plaintiffs filed no replication or other pleading. At the commencement of the trial the defendant objected to the introduc-

tion of the contract of February 26, 1957 upon which the suit was based, or of any other matters which occurred more than three years prior to the suit, on the ground that, although the defendant had pleaded the three-year statute of limitations (Code (1957), Art. 57, Sec. 1), the plaintiffs had filed no replication setting up exceptions to, or matters in avoidance of, the statute, and therefore the plaintiffs could not avail themselves of such matters and hence the claims were barred by the statute. The trial court, however, allowed the introduction of the evidence after the plaintiffs, in open court, joined issue on the plea of limitations, asserting it to be their position that no cause of action arises until it is discovered, and that the declaration alleged discovery within three years before suit. The court stated that it would reserve decision on the question of limitations until after all of the evidence was introduced. The defendant objected as the evidence was offered.

With respect to the two notes which were the basis of counts one and two of the declaration, counsel for the plaintiffs asked Houser whether he had any knowledge of their existence prior to their receipt by the corporation in a letter dated April 3, 1958 from one of the trustees of the cemetery care fund. Apparently, counsel expected a negative reply to this question, but Houser answered that he had learned of the notes from the trustee previously, when he began to check into the condition of the care fund. The time when this occurred was not pursued further in direct examination, but during cross-examination Houser stated several times that it had occurred "sometime in the summer of 1957." That was, of course, more than three years before suit was filed in November, 1960. Killen's position was that Houser knew about the notes even before he purchased the stock, and that therefore he had not been prejudiced. Other testimony indicated that the two notes were not included in the audit of December 31, 1956.

Concerning the eighth count, Houser testified that when he and Harold Miller were negotiating to purchase Killen's stock —prior to the agreement of February 26, 1957—Killen told them, in effect, that while he held title to the "well lot", it was really the property of the cemetery corporation, and informed them it was subject to a $4,000.00 mortgage which was then

in default and that if the mortgage was not paid off immediately the lot would be lost to the corporation. According to Houser, he and Miller advanced $4,060.00 (including interest) to Killen in November, 1956 for the payment of the mortgage upon the agreement of the latter that he would deed the lot to the corporation when it was released by the lien holder. Houser stated that the corporation's records showed that this $4,060.00 came into the hands of the corporation. A corporation check was then introduced showing the payment of $4,060.00 to Killen on January 31, 1957, with the stub notation reading "Payment of $4000.00 Note, Wallace & Sons" (Wallace & Sons allegedly being the holders of the mortgage). Houser said Killen later told him that he had paid off the mortgage. His testimony shows he learned that Killen did not intend to convey the lot to the corporation in March, 1957, after the transfer of the stock, when he and Miller went to the office of the attorney who had handled the stock sale, for a final settlement with Killen. Houser stated that, at this time, when he asked Killen about deeding the lot to the corporation, Killen denied that the corporation had ever owned the lot, or that he had ever transferred it to anyone as security for a mortgage for $4,000.00. At the trial, Killen himself testified that he had conveyed the "well lot" to the corporation in 1951, without consideration, and that the latter had transferred it back to him in 1952, without consideration. This was substantiated by a title examiner called on behalf of the appellant who had abstracted the title of the "well lot" and found no revenue stamps on either deed. The $4,060.00 paid to Wallace & Sons was, according to Killen, a personal obligation paid with funds which were partially his and partially the corporation's (due to some intermingling of funds in connection with a related property transaction). He denied having represented the "well lot" to be part of the assets of the corporation.

In connection with the ninth count, Alice Henson testified that she had loaned the corporation $20,000.00 in March, 1954 for which she received a note. This obligation was eventually paid off after she filed suit thereon a few years later. According to her testimony she also donated $19,766.50 for the construction of a memorial fountain, which sum was distinct from

the $20,000.00 she had earlier loaned the corporation. It is the check for $19,766.50, dated in April, 1954, which appellees allege was given to the appellant but the proceeds of which never found their way into the corporation's funds, although the declaration erroneously stated the amount to have been $20,000.00. Although both checks were made payable to the appellant, and were endorsed and cashed by him, appellant stated that all of the money received from Alice Henson, including the $19,766.50 donation for the fountain, was turned over to the corporation. However, an auditor testified that he could find no transfer of the sum to the corporation on its books. Both sides agreed that the fountain was built. Houser testified that the records of the corporation showed that it paid the bills, while Killen testified that the corporation did so with the money he had received from Mrs. Henson.

At the conclusion of the appellees' case appellant moved for a directed verdict as to all counts remaining in the declaration (counts 3, 5, 6 and 7 having been withdrawn as noted above) on the theory that any cause of action which could have accrued in favor of the corporation, or its sole stockholder, Houser, would have accrued as to the first two counts on February 26, 1957, or at least no later than 90 days thereafter under the contract, and as to the last two counts on February 26, 1957, or even earlier when the alleged promises were made, or funds allegedly were converted by appellant, and that therefore all of the claims were barred by limitations. After considerable discussion concerning appellees' claim that they did not discover any of the causes of action for which they were suing until within three years before suit, the court denied appellant's motion. Appellant renewed his motion at the conclusion of his case on the same grounds, and although it was granted as against the corporation with respect to counts one, two, four and eight, and as against Houser as to count nine, this was done in order to avoid any duplication of collection in the event there was a verdict for the plaintiffs-appellees on these counts, and not on the ground of limitations. The court refused to direct a verdict for the defendant-appellant on all or any of the counts on the ground that the claims were barred by limitations. After the court gave certain instructions to the jury as to the running of

limitations, to which the appellant excepted, the jury found money damages for the appellee, Houser, on counts one, two and eight and for the appellee corporation on count nine. On count four, which is not reviewed in this opinion, they found for the appellant.

When the statute of limitations is pleaded as a defense the time at which the plaintiff became aware of his cause of action is not ordinarily controlling. The authorities are in virtual accord that as a general rule limitations against a right or cause of action begin to run from the date of the alleged wrong, and not from the date the alleged wrong is discovered by the plaintiff. *Brack v. Evans,* 230 Md. 548, 187 A. 2d 880 (1963); *Gloyd v. Talbott,* 221 Md. 179, 156 A. 2d 665 (1960); *Vincent v. Palmer,* 179 Md. 365, 19 A. 2d 183 (1941); *W., B. & A. Elec. R. R. Co. v. Moss,* 130 Md. 198, 100 Atl. 86 (1917); *Biays v. Roberts,* 68 Md. 510, 515, 13 Atl. 366 (1888); *West v. Board of Ed. of Prince George's County,* 165 F. Supp. 382 (D. D. C. 1962); 2 Wood, *Limitations of Actions* (4th ed. 1916), Sec. 276 c (1); 34 Am. Jur., *Limitation of Actions,* Sec. 230; 54 C.J.S., *Limitations of Actions,* Sec. 205. An exception to the rule is provided by Code (1957), Art. 57, Sec. 14, in cases of fraudulent concealment of the cause of action by the defendant, but in the case before us the plaintiffs neither alleged nor proved fraudulent concealment on the part of the defendant. Cf. *Brack v. Evans, supra; Citizens Bank v. Leffler,* 228 Md. 262, 179 A. 2d 686 (1962); *Piper v. Jenkins,* 207 Md. 308, 113 A. 2d 919 (1955).

It is obvious that the alleged wrongs complained of by the appellees—*i.e.,* their causes of action—occurred more than three years before this suit was filed on November 9, 1960. The appellant could have been sued for payment of the cemetery corporation's notes mentioned in counts one and two of the declaration at any time subsequent to 90 days after February 26, 1957, which was the period during which he contracted to pay obligations of the corporation that did not appear on the audit. He could have been sued for repayment of the $4,060.00 which Houser claims he and Miller advanced for payment of the mortgage on the "well lot", at least at any time after March, 1957, when the appellant indicated to Houser that he did not

344

intend to convey the lot to the corporation, as he had allegedly promised in November, 1956, to do. He could have been sued by the corporation at any time after he allegedly received and converted the Henson donation of $19,766.50 for a fountain in 1954.

Even under the appellees' theory that "no cause of action arises until it is discovered" (which we do not intimate to be tenable, at least in the absence of an exception to the bar of the statute as in cases of fraud, misrepresentation or concealment, not here alleged or proved, see *Gloyd v. Talbott, supra,* at p. 185 of 221 Md.), the evidence offered by the appellees themselves has put them out of court. As to Houser's claims under the first, second and eighth counts, his own testimony reveals that he learned of the existence of the two notes in the summer of 1957, and of Killen's refusal to convey the "well lot" in March, 1957, in each instance well before the commencement of the three year period prior to suit. As to the corporation's claim under the ninth count with respect to the Henson advancement, the declaration and the testimony make it clear that the officers of the corporation had knowledge of the donation when it was made, and, indeed, agreed to construct the fountain with the money. Moreover, there was no claim or showing that Killen ever represented the advancement to be an asset of the corporation at the time of the stock sale. The causes of action manifestly were stale claims when suit was filed.

We have not overlooked the appellant's contention that in the absence of any allegation of facts which would toll the running of limitations (either in the declaration or other original pleading, or by way of replication), a plaintiff is precluded from offering evidence of such facts. Assuming, without deciding, that a replication would have been necessary in the instant case as the basis for presentation of evidence of such facts (see, for example, *Piper v. Jenkins, supra; Public Utilities Co. v. Baile,* 152 Md. 371, 136 Atl. 825 (1927) ; *Planters' Bank of Prince George's County v. Bank of Alexandria,* 10 G. & J. 346 (1839) ; Anno., 115 A.L.R. 755; but compare *Barney v. Smith,* 4 H. & J. 485 (1819) ; *Brown v. Hebb,* 167 Md. 535, 175 Atl. 602 (1934) ; *Knight v. Knight,* 155 Md. 243, 141 Atl. 706 (1928) ), here no proof of any facts in avoidance of the bar of limitations

was offered and hence we do not find any further discussion of the point necessary.

Since the evidence showed that the claims were barred by the statute of limitations, the appellant's motion for a directed verdict should have been granted. In view of our holding, it is unnecessary to consider the instructions to the jury.

*Judgment reversed, without a new trial; costs to be paid by appellees.*