CHARLES ELLIS WALSTON ET AL. *v.* JOHN
EMORY DOBBINS ET UX.

[No. 235, September Term, 1970.]

*Decided December 7, 1970.*

The cause was argued before ANDERSON, MORTON, THOMPSON, and POWERS, JJ.

*Matthew Swerdloff* for appellants.

*Paul Smelkinson,* with whom was *Roland Walker* on the brief, for appellees.

THOMPSON, J., delivered the opinion of the Court.

Charles Ellis Walston and Belle Isle Cab Company, Inc., driver and owner respectively of a taxicab, appeal from a judgment entered against them in the Superior Court of Baltimore City, Judge Albert L. Sklar presiding with a jury. On this appeal, the appellants contend the trial court erred in: (1) refusing to grant a directed verdict in favor of the defendants concerning the amount of damage to plaintiff's automobile; (2) permitting one medical doctor to testify from a written report provided to him from another doctor; (3) denying the defendants' motion to strike certain testimony from the medical doctor; (4) refusing to grant defendants' motion to strike certain testimony concerning the worth of the plaintiff's car and the extent of the damages thereto; and (5) refusing defendants' motion for a mistrial based on allegedly improper argument to the jury in closing argument by plaintiff's counsel.

Since no testimony was presented by the defense, the only account of the accident in question is given by the

plaintiff-appellee, John Dobbins, who stated he was driving west on Fayette Street in Baltimore City on June 17, 1965, at about 11:00 A.M. He entered the intersection of Fayette Street and Kenwood Avenue, traveling westward, when his car was struck in the side by the Belle Isle Cab Company taxicab which was northbound on Kenwood Avenue. Kenwood Avenue was controlled by a stop sign. The impact of the two cars colliding drove Dobbins' car across two lanes to the curb on the north side of Fayette Street. After the accident, Dobbins drove the damaged car to his doctor's office the next day, to his attorney's office, to Ewell Motors for an estimate; while returning home, the transmission stopped functioning. In October, 1964, Dobbins paid about $800. for the car, a 1960 Dodge Pioneer station wagon, and was allowed $25. as salvage for it. He never had it repaired. Dobbins stated the car's frame was twisted, the transmission ruined and various parts of the body dented. Photographs of the car were introduced into evidence.

Dobbins first noticed pain in the evening of June 17, 1965. The next morning, June 18, he consulted Doctor Maurice J. Berman, who referred him to Doctor Nathan Stofberg for x-rays and to a registered physical therapist. The number of visits to the physical therapist and the therapist's bill were stipulated to by counsel. Dobbins stated that the visits to the physical therapist tended to aggravate his condition, so that he again consulted Doctor Berman on January 6, 1967. Dobbins claimed no lost wages since he was self-employed as an aluminum contractor; he did, however, claim the pain interfered with his social activity, specifically dancing, bowling, and performing household chores. Dobbins stated he had not had any other serious injuries either before or after this accident.

Dr. Maurice J. Berman, testifying for the plaintiff, indicated that on June 18, 1965, Dobbins came to his office complaining of pains resulting from an automobile accident the day before. The pains were in the patient's left side, including the left shoulder, lower back and left

hip. Dr. Berman recited his findings based on his personal examination of Dobbins, including spasms and other injury reactions of Dobbins' lower back, left shoulder, hip, leg, and arm. Based on his examination, Dr. Berman prescribed a muscle relaxing drug and referred Dobbins to Dr. Nathan Stofberg for x-rays and to M. Angus Bloom for physical therapy.

As to the results of the x-rays, Dr. Berman testified orally based on Dr. Stofberg's report, which was never introduced into evidence. Defendants objected to this testimony. Dr. Berman indicated x-rays had been taken of the lumbar spine, the left shoulder and the left hip with all the x-rays indicating a normal condition. Dr. Berman next identified a bill from Dr. Stofberg for the x-rays and testified that, based on his familiarity with charges for x-rays, Dr. Stofberg's charges were fair and reasonable.

Dr. Berman indicated that he examined the plaintiff eight times, on June 18, 1965, January 6, 1967, August 23, 1967, October 11, 1967, November 1, 1967, December 13, 1967, January 24, 1968, and lastly on February 7, 1968. On the latter visits, Berman indicated that plaintiff still complained of the same type of pain, occasionally aggravated by the physical therapy. After the last visit in February, 1968, Dr. Berman concluded plaintiff had a permanent disability to the lumbo-sacral spine, a "loss of five degrees hyper-extension". Dr. Berman's total bill was $140.

James C. Rettaliata testified as an expert on the value of automobiles, based on his twenty-five years experience in the business of selling and reconditioning cars. Based on a description of the car and having seen photographs of it, Rettaliata felt the Dobbins car on June 17, 1965, before the accident, would have had a fair market value of approximately $995. He was unsure of what its value would be after the accident or whether it was a total loss. However, he stated that if the information he had received was accurate concerning frame damage, then the car would be a total loss.

Mrs. Lola Dobbins testified briefly for her husband, outlining the restrictions on his physical activity including dancing, bowling, and household chores like mowing the lawn.

At the end of trial, the trial judge directed a verdict in plaintiff's favor on the question of liability; the damage question was submitted to the jury.

## I Damages to Automobile

. Appellants complain the trial court erred in refusing to grant a directed verdict in their favor concerning the amount of damages to plaintiff's automobile; we agree.[1]

The plaintiff Dobbins testified he purchased this automobile several months before the accident for $800. and he was allowed $25. salvage value for it after the accident. He produced a picture of the car and stated the frame was bent, the transmission inoperative, and parts of the body were dented. He produced an expert, Rettaliata, who had seen the picture of the damaged vehicle, but not the vehicle itself. Rettaliata placed an evaluation at the time of the accident on an average car of like age, make and model at $995. There was no testimony to show that the car was average. He stated he could not tell from the picture whether the car was a total loss or not, but if the frame was bent it would be a total loss. There was no testimony as to whether the damaged automobile could or could not be restored by repair to substantially the same condition as was prior to the accident. Therefore, the motion should have been granted under the clear test set out in *Taylor v. King,* 241 Md. 50, 213 A. 2d 504, at 506:

> "On the question as to whether the damaged automobile could reasonably have been restored by repairs to substantially the same condition that it was in before the accident, there are in-

---

1. The motion was for a complete directed verdict and was properly denied by the trial judge; but in considering the motion he considered the grounds separately, including damages to the car, and granted the portion concerning loss of use of the vehicle. We shall, therefore, consider the grounds as separate motions.

sufficient facts to make a determination. The only evidence in the record which is even close to being relevant to the issue is the testimony of the appellee who, in reply to a question as to why he did not have the automobile repaired, stated that 'in the case where a frame and body structure have to be straightened to the extent that this car would have to be straightened [he] felt that by straightening those members the car would have been weakened more and would not have been put in a safe acceptable condition for future use.' Although it appears that the appellee was possibly qualified to testify as an expert witness, in view of the fact that he had been for many years the supervisor of maintenance, repairs and purchasing for the trucking division of a trucking company and had had responsibilities in respect to repairing and maintenance of the company vehicles, his testimony was not sufficient positive evidence of whether the automobile could or could not be restored by being repaired to substantially the same condition that it was in before the accident, at reasonable costs. Evidence should have been presented as to how extensively the frame and body were damaged and whether these conditions could or could not have been corrected."

## II  X-Ray Report

Appellants contend the trial court erred in allowing Dr. Berman to testify orally based on a written report forwarded to him from Dr. Stofberg citing results of the x-rays. Since the x-ray report showed nothing abnormal in Dobbins' condition, the admission of the testimony, if error, was, of course, harmless.

Appellants also contend it was error to allow Dr. Berman to testify as to the fairness and reasonableness of Dr. Stofberg's bill. Having established his knowledge, through experience, as to the charges of x-ray specialists,

Dr. Berman was properly allowed to testify as to the fairness and reasonableness of the bill. *Simco Sales Service of Md., Inc. v. Schweigman,* 237 Md. 180, 205 A. 2d 245, *Zahn v. Heil,* 192 Md. 576, 64 A. 2d 564.

### III  Later Medical Treatment

Next, appellants contend the trial court erred in refusing defendants' motion to strike the testimony of Dr. Berman beginning with the January 6, 1967 visit of Dobbins. Appellants claim the doctor's testimony about treatment, beginning on January 6, 1967, indicates a subsequent injury independent from any injuries caused by the accident of June 17, 1965. This contention is not supported by the record. Dr. Berman's testimony, as well as Dobbins' testimony, clearly indicates the treatment given on January 6, 1967, and in the visits following that date were for the same injuries treated in the initial visit.

### IV  Alleged Vague Testimony

Appellants contend the trial court should have struck from the record as vague and indefinite the testimony of James C. Rettaliata as to the value of the automobile. We do not think the testimony was vague or indefinite, although as we indicated above, it was not by other testimony connected with the vehicle in question.

### V  Jury Argument

Lastly, appellants contend the trial court erred in refusing their request for a mistrial based on alleged improper closing argument of plaintiff's counsel. The argument in question was as follows:

> "There's been no testimony adduced by the Cab Company to indicate that—by any physician to indicate that Mr. Dobbins had not received any injuries * * *
>
> "The defendant would have the right on application to have the plaintiff examined if they so desired. But I don't think there is anything wrong in the plaintiff commenting upon the ab-

sence of medical testimony. . . . I think the plaintiff has the right to comment on the absence of any medical testimony by the defendant."

This Court agrees with the trial judge's ruling that counsel's comment on the absence of evidence was proper. We do not think *Leach v. Metzger,* 241 Md. 533, 217 A. 2d 302 or *Jacobson v. Julian,* 246 Md. 549, 229 A. 2d 108 compels a contrary conclusion.

The jury argument concerning damage to the vehicle seems proper, also, but if there were any error it will be corrected by our disposition of the case.

## VI Disposition

In testimony, the appellee, and in jury argument, his counsel, claimed property damages of $775.00. We will, therefore, dispose of the trial court's error in failing to grant a directed verdict on this issue by reducing the judgment by this amount. See *Feinberg v. George Washington Cemetery, Inc.,* 226 Md. 393, 174 A. 2d 72.

> *Judgment reduced by $775.00 and judgment entered for $10,225.00. Costs to be paid equally by the appellants and the appellee.*